**RAILROAD COMMISSION OF TEXAS, Appellant,**

v.

**LONE STAR GAS COMPANY, a Division of Enserch Corporation, Appellee.**

No. 13335.

Court of Civil Appeals of Texas, Austin.

Jan. 28, 1981.

Rehearing Denied Feb. 18, 1981.

Mark White, Atty. Gen., J. Scott Wilson, Asst. Atty. Gen., Austin, for appellant.

Barry Bishop, David C. Duggins, Clark, Thomas, Winters & Shapiro, Austin, for appellee.

SHANNON, Justice.

Appellee Lone Star Gas Company filed an administrative appeal from the order of appellant Railroad Commission of Texas in Gas Utilities Docket 1101 in the district court of Travis County. The Commission's order set rates for natural gas service to residential and commercial customers in the city of Dodson. After hearing, the district court entered judgment setting aside the Commission's order. This Court will affirm the judgment of the district court.

In its second conclusion of law, the district court held that the rate of return granted the gas company was not supported by substantial evidence in that the rate of return was derived from the use of a discounted cash flow formula not shown in the record. The Commission in its first point of error claims that the district court "... erred in concluding that the rate of return

granted the company was not supported by substantial evidence."

The subject of point of error one is the fair rate of return, not the rate base. Generally, the agency ascertains the overall cost of capital as one step in estimating the rate of return. One of the disputed elements of the overall cost of capital in most cases of this type is the cost of common stock capital.

The gas company called E. Elmo McAlister, Jr., in the agency proceeding to testify as to rate of return. Neither counsel for Dodson nor the examiner challenged McAlister's qualifications to testify. McAlister estimated the cost of the gas company's common stock capital to be 18 percent, although his method in arriving at that percentage is not very clearly spelled out in the hearing record. There was no other evidence as to cost of common stock capital.

The hearings examiner repudiated the testimony of the gas company's witness and chose to rely upon his own discounted cash flow formula. The examiner set out that formula in complex computations in his proposals for decision.

There was no evidence in the agency hearing that the discounted cash flow formula is an accurate, reliable, or accepted method to use in determining the cost of common stock capital. Further, there was no evidence offered showing that the components used in the formula were proper or appropriate.

From an examination of the proposals for decision it is plain that the critical factor in the case, cost of common stock capital, was determined by ignoring the evidence and espousing a formula not supported by proof.

██ The Commission admits that its use of the discounted cash flow formula method is not supported by any evidence. Nevertheless, the Commission argues that its order is supported by its own expertise. That position is without merit. The Commission's expertise is not a substitute for proof. A valid exercise of agency expertise, like other agency action, must find ultimate support upon evidence taken at the hearing or upon facts officially noticed by the hearings officer in the record of such hearing. *Railroad Comm'n of Texas v. Lone Star Gas Co.,* 611 S.W.2d 908 (Tex.Civ.App.1981); *Texas Health Fac. Comm'n v. Nueces County Hospital Dist.,* 581 S.W.2d 768 (Tex.Civ.App.1979, writ ref'd n. r. e.).

The Commission's other argument in support of its order is that it took official notice of the discounted cash flow formula under Section 14(q) of the Administrative Procedure and Texas Register Act,[1] thereby placing the formula in the record.

Section 14(q) provides:

"In connection with any hearing held under the provisions of this Act, official notice may be taken of all facts judicially cognizable. In addition, notice may be taken of generally recognized facts within the area of the agency's specialized knowledge. Parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material officially noticed, including any staff memoranda or data, and they must be afforded an opportunity to contest the material so noticed. The special skills or knowledge of the agency and its staff may be utilized in evaluating the evidence."

Because the discounted cash flow formula was set out and discussed in the Examiner's Proposals for Decision, the Commission takes the position that the formula was therefore officially noticed pursuant to § 14(q). This is so, argues the Commission, because the proposals for decision are "preliminary reports" within the meaning of § 14(q).

██ An agency's power to take official notice of a matter within its specialized knowledge is always subject to the proviso that the parties must be given adequate advance notice of the facts which the agency proposes to notice, and given adequate opportunity to show the inaccuracy of the

---

1. Tex.Rev.Civ.Stat.Ann. art. 6252–13a (1981).

facts or the fallacy of the conclusions which the agency proposes tentatively to accept without proof. To satisfy this requirement, it is necessary that a statement of the matters noticed be incorporated into the record. The source material upon which the agency relies should, on request, be made available to the parties for their examination. I Cooper, State Administrative Law 412 (1965).

The purpose of official notice provisions, such as § 14(q), is to require notice be given of the officially noticed materials at a time in advance of the hearing, adequate to permit the parties to contest the materials during the hearing. To construe § 14(q) as permitting official notice to be taken in the examiner's proposals for decision, necessarily filed long after the close of the hearing, would not further that purpose. The point of error is overruled.

The judgment is affirmed.

POWERS, J., not sitting.