**RAILROAD COMMISSION OF TEXAS, Appellant,**

v.

**LONE STAR GAS COMPANY, Appellee.**

No. 13363.

Court of Civil Appeals of Texas, Austin.

June 3, 1981.

Rehearing Denied June 24, 1981.

Mark White, Atty. Gen., Martha V. Terry, Asst. Atty. Gen., Austin, for appellant.

Barry K. Bishop, David C. Duggins, Clark, Thomas, Winters & Shapiro, Austin, for appellee.

SHANNON, Justice.

Appellee Lone Star Gas Company filed an administrative appeal from the order of appellant Railroad Commission of Texas in Gas Utilities Docket No. 1859 in the district court of Travis County. The Commission's order set rates for natural gas service to residential and commercial customers in Tye and Olney and in the environs of both towns. After hearing, the district court rendered judgment setting aside the Commission's order and remanding the cause to the agency. This Court will affirm the judgment of the district court.

The district court concluded, among other things, that the commission improperly based its rate of return determination on the discounted cash flow formula, and the agency's order in this respect was not supported by substantial evidence. The Commission by its first point of error attacks the district court's conclusion.

The general subject of this appeal is the utility's fair rate of return. Generally, the regulating agency ascertains the overall cost of capital to the utility as one step in arriving at the rate of return. One of the disputed elements of the overall cost of capital is usually the "cost" of common stock capital. See *Railroad Com'n of Tex. v. Lone Star Gas Co.*, 611 S.W.2d 908 (Tex. Civ.App.1981, writ ref'd n. r. e.).

Prior to the Commission hearing, the hearing examiner wrote counsel for the gas company requesting, "A discounted cash flow analysis of the cost of capital to Enserch, a description of the methodology used in such analysis, and all facts relied upon in conducting the analysis and the source of those facts." In connection with this request, the hearing examiner wrote, "Lone Star is not being asked to sponsor a particular methodology to calculate rate of return and is free to present any method it chooses."

Neither Tye nor Olney appeared or presented evidence at the Commission hearing. As a result, the gas company introduced all of the evidence at the hearing, including, of course, the evidence concerning rate of return.

Lone Star called Mike E. Florence as an expert witness to testify as to rate of return. Florence calculated the "cost" of Lone Star's common stock capital to be 18 percent. Florence based his estimate upon a modified "comparable rate of earnings" method.

In response to the hearing examiner's request for a discounted cash flow analysis of the "cost" of common stock capital, Lone Star called Gloria L. Ramsey, a graduate economist. Ramsey testified to the following: that many rate of return experts do use one or another of the various discounted cash flow methods in examining the appropriate rate of return on book common equity appropriate for a given utility. However, no such expert uses the discounted cash flow formula without some "judgment input." She stated that in addition to the "judgment input," some such rate experts adjust the discounted cash flow formula for market flotation; some adjust for inflation; and some try appropriate adjustments for specific risks of the particular utility in relationship to the market. Further, the discounted cash flow formula is rarely used alone by rate experts, since most experts do not rely upon any simplistic formula without further considering general market conditions and specific market conditions relating to the particular utility, as well as to what the reasonably expected future conditions will be.

Ramsey testified that a number of the utility commissions, which once used the discounted cash flow formula, have now reconsidered its usefulness. Other experts, according to Ramsey, have viewed the "DCF" formula as unacceptable, at least in part, as applied to gas transmission companies. Ramsey observed further that the discounted cash flow formula is only so good as the assumptions behind it and only so good as the choice of the "input" data placed into the formula. She stated that no discounted cash flow formula, thus far promulgated, gives results which consistently appear reasonable. Ramsey testified that she was suspicious of any result from any formula and would not rely exclusively on such formula without substantial additional information. The "DCF" formula, by itself, is no more accurate nor scientific than any other single method of reaching a rate of return. Although the formula's attraction to the regulators is that it appears to be "scientific" and not subject to judgment, it is in fact as subject to judgment as any other determination of return on common stock capital due to the many different assumptions that must be made.

Ramsey testified further that the proprietary of the use of a discounted cash flow formula is an issue which must be expertly addressed before the formula has "any validity whatsoever in the ratemaking process." She opined further that a discounted cash flow formula, if employed by the Commission, should be one sponsored by testimony of an expert. Such expert would have to discuss all aspects of the formula and address questions regarding market

value to book value, the relationship of historical versus future returns and discuss adjustments related to risk and attrition.

The hearing examiner rejected the expert testimony of Florence, related to the "cost" of common stock capital based upon comparable rates of earnings of other gas companies. The examiner apparently disregarded the testimony of Ramsey, and used a discounted cash flow method to estimate the cost of common stock capital. In this connection, the hearing examiner observed, "A widely accepted means of determining the cost of equity from the market price of the stock and investor's reasonable expectations about the future is the discounted cash flow method ..." The examiner cited no authority for such statement other than the fact that the Commission had used the formula in the past. The "DCF" method was stated by the examiner in the following equation: $Ke = D/P + G$. The examiner's calculations, using the discounted cash flow formula, resulted in a cost of common stock capital of 13.7%.

█ The critical problem in the determination of the overall cost of capital in cases such as this one, is that of estimating the "cost" of the common stock capital. Bonbright, Principles of Public Utility Rates at 246 (1961). The determination of that component is not, of course, an exact science so as to establish that "cost" as a matter of law, but instead is the proper subject of expert testimony. *Railroad Com'n of Tex. v. Lone Star Gas Co., supra.*

The method employed by the gas company's expert witness was the comparable rate of earnings method. The hearing examiner rejected that method. As reflected by Ramsey's testimony in this case, the discounted cash flow formula, which was adopted by the hearing examiner, has been criticized.

█ In a given case, the Commission is free to adopt any recognized method it judges best suited to estimate "cost" of common stock capital, provided that such method is supported by the administrative record. *Railroad Com'n of Tex. v. Lone Star Gas Co., supra.*

This Court has concluded that the examiner's use of the discounted cash flow formula is not supported by substantial evidence. Ramsey's testimony cannot be viewed as evidence supportive of the Commission's adoption of the discounted cash flow formula. To the contrary, Ramsey's evidence is profoundly critical of the usefulness of the formula.

The Commission's *apologia* in support of its adoption of the discounted cash flow formula in the absence of supporting evidence is akin to that presented to and rejected by this Court in two recent appeals, *Railroad Com'n of Tex. v. Lone Star Gas Co., supra,* and *Railroad Com'n of Tex. v. Lone Star Gas Co.,* 611 S.W.2d 911 (Tex.Civ. App.1981, writ ref'd n. r. e.). The Commission in this appeal again claims that because the "... DCF formula is a methodology which is applied to facts in evidence it is not evidentiary in nature and does not require a sponsoring witness as such." The argument continues, "[i]f the Commission as the trier of fact has the discretion to weigh the credibility of the recommendations of Lone Star's expert witness, it is a small step to reach the conclusion that, as the trier of fact, it may consider mathematical methodologies not sponsored by the company's witnesses, in reach of its decision."

In support of its position that its methodology need not be supported by proof, the Commission states that it possesses the discretion and responsibility to use its own expertise in reaching a decision which fulfills its obligations under the Public Utility Regulatory Act and the Administrative Procedure and Texas Register Act. The Commission claims that should factual or opinion evidence be presented that is biased or inappropriate, the Commission must reply upon its own "... in-house expertise to interpret the factual evidence before it in order to fulfill its statutorily mandated duties to set reasonable rates."

█ It is true that the expertise of the agency and its staff may be utilized in evaluating the evidence. This, of course, is quite a different thing from the utilization

of agency expertise as a substitute for evidence. Stated differently, agency expertise cannot be a substitute for proof. A valid exercise of agency expertise, like other agency action, must find ultimate support in evidence taken at the hearing or upon facts officially noticed by the hearing officer in the record of such hearing. *Dotson v. Tex. State Bd. of Medical Examiners*, 612 S.W.2d 921 (Tex.1981); *Railroad Com'n of Tex. v. Lone Star Gas Co., supra; Texas Health Fac. Comm'n v. Nueces County Hospital Dist.*, 581 S.W.2d 768 (Tex.Civ.App. 1979, writ ref'd n. r. e.).

■ The Commission, of course, is not bound to accept the testimony of witnesses, expert or non-expert. *City of Frisco v. Texas Water Rights Comm'n*, 579 S.W.2d 66, 69 (Tex.Civ.App.1979, writ ref'd n. r. e.). From an examination of the findings of the hearing officer and the order of the Commission, it is evident that the Commission chose not to accept the testimony of Gloria Ramsey discrediting the use of the discounted cash flow formula. Even though Ramsey's view may have been disregarded by the Commission, there remains an absence of affirmative evidence that the discounted cash flow formula *is* an accurate, reliable, or an accepted method to employ in determining the "cost" of common stock capital. Further, there was no evidence indicating that it was appropriate to apply such formula to Lone Star *in this case.* The Commission, therefore, was not free, under this record, to adopt the "DCF" formula as the method to estimate "cost" of common stock capital.

The Commission argues, finally, that it employed facts and figures, supplied by Ramsey at the instance of the hearing officer, in its application of the discounted cash flow formula. This may, or may not, be so. The point is, however, that the Commission's adoption of the discounted cash flow formula, itself, is not supported by substantial evidence. It is, unnecessary, therefore, to consider whether or not the components used by the examiner in the formula were proper or appropriate.

The judgment is affirmed.

Affirmed.