RAILROAD COMMISSION OF TEXAS, Petitioner,

v.

LONE STAR GAS COMPANY, A DIVISION OF ENSERCH CORPORATION, Respondent.

No. C–1888.

Supreme Court of Texas.

July 20, 1983.

Rehearing Denied Sept. 21, 1983.

Jim Mattox, Atty. Gen., James R. Meyers and Phyllis B. Schunck, Asst. Attys. Gen., Austin, for petitioner.

Clark, Thomas, Winters & Shapiro, David C. Duggins, Austin, Joe N. McClendon and David Gamble, Dallas, for respondent.

RAY, Justice.

This is a suit for judicial review of an order of the Railroad Commission of Texas. The district court sustained an order of the

Railroad Commission which fixed the effective date for a rate increase for natural gas service supplied by Lone Star within the City of Kaufman and its environs. The court of appeals reversed the judgment of the district court and remanded the cause to the district court with directions that the court remand the proceeding to the Commission. 644 S.W.2d 166. We reverse the judgment of the court of appeals and affirm the judgment of the district court.

In September 1978, Lone Star applied to the city of Kaufman, Texas, for a rate increase. Upon the city's rejection of the proposed rates, the gas company filed its appeal with the Commission on October 6, 1978. On November 17, 1978, the city and the gas company waived their respective rights to a formal hearing before the Commission. The Commission handed down its final order on February 11, 1980, providing that the rate increase granted the gas company would be effective as of March 8, 1979.

Lone Star claims the Commission abused its discretion in selecting March 8, 1979, as the effective date for the rate increase granted the company by the Commission. Lone Star does not attack the rate itself, or the district court's conclusion that such rate was within the statutory parameters, but argues only that the Commission granted it the minimum rate allowed by law and each day the Commission delayed the effective date of the new rate resulted in confiscation of its property because it was required to operate under the old, allegedly inadequate rate. Since the rate increase was supposedly the absolute minimum, Lone Star insists that the Commission was required to make the rate increase effective at the earliest possible date.

The date from which the Commission makes its order effective is important for economic reasons. The underlying issue in this appeal concerns Lone Star's effort to minimize its claimed economic losses resulting from "regulatory lag" in the decisional process of the Commission. Regulatory lag arises from the loss in revenue experienced by a utility whose rates are in need of upward adjustment during the period between filing an application for a rate increase and the date when relief is granted. The longer the time required to process and pass on the application, the greater the revenue loss arising from regulatory lag. Accordingly, the time consumed in processing and deciding a rate case assumes real economic significance. Garfield and Lovejoy, *Public Utility Economics,* at 266 (1964).

■ The court of appeals held that Section 16(d) of the Administrative Procedure and Texas Register Act (APA) demonstrates the legislature's intent that agencies conduct business in an orderly, prompt and proper manner. Tex.Rev.Civ.Stat.Ann. art. 6252–13a.[1] Further, the court concluded that under the policy considerations of section 16(d), the *last* day the Commission may permissibly make the new rate effective in the ordinary case is: (1) sixty days after the date of formal hearing is closed; or (2) in stipulated cases, such as this one, sixty days after the date the formal hearing is waived by the parties. The earliest date on which the Commission may authorize increased rates, under the court of appeals' holding, is the date of the city ordinance denying the request for an increase. 644 S.W.2d at 168. Both parties filed applications for writ of error to this Court complaining of the court of appeals' holding. The Commission and Lone Star argue there is no need for the judiciary to create a hard and fast rule of general application delineating the bounds of the Commission's effective date discretion, because a standard abuse of discretion review to be applied to the facts and circumstances of each case is all that is required. We agree.

## SECTION 16(d) OF THE APA

■ Section 16(d) of the APA provides that an agency's "final decision or order must be rendered within sixty days after the hearing is finally closed." This section was not intended to fix a time limitation upon the power of administrative agencies

---

1. All statutory references are to Texas Revised Civil Statutes Annotated.

to render decisions after expiration of the sixty days mentioned, but to promote order and prompt conduct of agency business. *Suburban Utility Corporation v. Public Utility Commission of Texas,* 652 S.W.2d 358, 361 (Tex.1983). This section has been held to be directory rather than mandatory. *Id.* at 361; *Railroad Commission v. City of Fort Worth,* 576 S.W.2d 899 (Tex.Civ.App. —Austin 1979, writ ref'd n.r.e.).

Both parties urge this Court to consider the unjust effects and impracticalities of the construction given section 16(d) by the court of appeals.[2]

Many other states have statutes similar to section 16(d).[3] Only a few of the statutes have been judicially construed; however, no court has interpreted the statute as requiring that orders, made after the expiration of the time provided for decision, be made retroactively effective. For example, although Florida's statute has been construed as mandatory, *Financial Marketing Group, Inc. v. State Department of Banking and Finance, Division of Securities,* 352 So.2d 524 (Fla. 3rd D.C.A.1977), its supreme court has held that the agency's failure to comply renders its order unenforceable only if untimely rendition impaired the fairness of the proceeding or the correctness of the result. *Department of Business Regulation, Division of Pari-Mutuel Wagering v. Hyman,* 417 So.2d 671 (Fla.1982). The

proper remedy for a party to an agency action in Florida where the agency has delayed making a decision beyond the statutory limits is to seek a writ of mandamus compelling the agency to act. *Id.* at 673. *See also, State ex rel. Northern Pacific Transport Company v. Public Service Commission,* 82 N.W.2d 597 (N.D.1957); *Toms River Water Company v. New Jersey Board of Public Utility Commissioners,* 82 N.J. 201, 412 A.2d 430 (1980).

 The court of appeals has created a judicial requirement that agencies make orders effective within sixty days of hearing based primarily on the policy reasons behind a non-mandatory statute. No other authority was cited by that court. Although we believe that agencies should conduct their business in a prompt manner, any mandatory requirement should come from the legislature. Therefore, we hold the court of appeals erred in creating a rule which defines the bounds of the Commission's discretion in setting effective dates for its orders.

## THE PUBLIC UTILITY REGULATORY ACT

 The substantive statute presently governing gas utility rate cases[4] allows the regulatory agency with original jurisdiction[5] 185 days in which to reach a decision.

2. The court of appeals apparently did not consider the remainder of section 16(d) which provides that in contested cases heard by examiners rather than by the agency, the agency may prescribe a longer period of time within which the final order of the agency shall be issued. This provision would allow the agency to indefinitely extend the time for decision by merely announcing so at the end of the hearing and remain in compliance with section 16(d). Additionally, the Commission estimates that the time required by the ordinary contested case from the date of the closing of the hearing to the date that the decision goes into effect is approximately 120 to 150 days. Therefore, the court of appeals' holding would require the Commission to make its orders effective retroactively. Moreover, all regulatory authorities subject to the APA would be bound by the "sixty day rule," and evidently the court of appeals did not consider the impact its decision would have on the various regulated industries and their customers.

3. *See e.g.,* Ala.Code § 41–22–16(a) (1975) (final order be rendered within thirty days after hearing is concluded, the examiner's report filed, or all written material filed); Fla.Stat.Ann. § 120.-59(1) (agency shall render decision within ninety days after hearing concluded, recommended order submitted by examiner, or all written evidence and briefs filed, if no hearing held); Tenn.Code Ann. § 4–5–314(g) (Supp.1982) (order to be rendered within ninety days after conclusion of hearing or submission of proposed findings).

4. After September 1, 1983, the substantive statute governing gas utilities will be article 6447, § 20, Gas Utility Regulatory Act.

5. The determination of an effective date is complicated by the fact that the instant case is a consolidated one involving both a rate with the Commission's original jurisdiction and an appeal to the Commission of the city's denial of an increase. The Railroad Commission has

*See* Art. 1446c, § 43, Public Utility Regulatory Act (PURA). Section 43 of PURA provides a detailed program in an attempt to compensate a utility for undue regulatory lag by limiting the periods of suspension. The rate may not become effective for a minimum of thirty-five days, and the agency may suspend its effectiveness for 120 days beyond that. Further, the agency may extend the suspension for another thirty days. These provisions are supplemented by vesting in the agency authority to approve temporary rates, by permitting the utility to institute its new rates, without agency approval, and by filing a bond adequate to protect the customers if the agency ultimately approves a lower rate. Article 1446c, § 43(d) and (e). *See Southwestern Bell Telephone Company v. Public Utility Commission of Texas,* 615 S.W.2d 947 (Tex.Civ.App.—Austin), *writ ref'd n.r.e. per curiam,* 622 S.W.2d 82 (Tex.1981).

The Commission argues that the statutory provisions permitting "bonding in" of rates and temporary rates are an adequate protection against regulatory lag and Lone Star lost its right to complain by not availing itself of these remedies. The rates within the city of Kaufman over which the Commission exercised appellate jurisdiction and which represent most of Lone Star's revenues in controversy are not subject to being "bonded in." *Arkansas Louisiana Gas Co. v. Railroad Commission of Texas,* 586 S.W.2d 643 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.). Although the Public Utility Commission grants interim relief, Lone Star argues that it is the Railroad Commission's policy not to grant interim rate relief unless the utility is able to demonstrate a negative cash flow.

We hold that Lone Star did not waive its complaint to this Court, by failing to bond in the proposed rates or seek temporary rates. Although the measures for lessening the effect of regulatory lag provided by section 43 were of little assistance to Lone Star in this case, any changes in the protec-

tion afforded the utility should be made by the legislature.

### ABUSE OF DISCRETION

Having determined the court of appeals erred in limiting the Commission's discretion in setting effective dates for its orders, we must now decide whether the Commission abused its discretion in this case.

■ Any discussion of when the Commission's rate orders should be effective must start with the fundamental principle that utility rates are set for the future, and not the past. *See Railroad Commission v. Houston Natural Gas Corp.,* 155 Tex. 502, 289 S.W.2d 559, 562 (1956). Section 43(f) of PURA implicitly recognizes this principle by prescribing that rates set by order of the Commission "are thereafter to be observed . . . ." Of necessity, the rates are based on historical data obtained from a test year; therefore, some lag is inherent in the process. Art. 1446c, § 3(t). Regulatory lag is an element of the risk associated with investment in a utility. Garfield and Lovejoy, *Public Utility Economics,* pp. 122–23 (1964); Bonbright, *Principles of Public Utility Rates,* p. 242 (1961).

■ Under its substantive rules, the Railroad Commission has the authority to determine the effective date of its orders. A final decision or order will become effective, unless otherwise stated, on the date of Commission action and it shall be incorporated in the order. Tex.R.R.Comm'n, Gas Util.Div., Substantive Rules 051.04.03.027; 051.01.01.093.

■ In Texas, a regulatory authority has discretion in setting the effective date of a new rate. *United Gas Public Service Company v. State of Texas,* 89 S.W.2d 1094 (Tex.Civ.App.—Austin 1935, writ ref'd), *affirmed,* 303 U.S. 123, 58 S.Ct. 483, 82 L.Ed. 702 (1938). In other jurisdictions, the earliest possible effective date for a rate order is the date of the order itself. *See e.g., Montana Horse Products Co. v. Great Northern*

---

original jurisdiction in environs cases, but only has appellate jurisdiction over rates established

within a municipality.

*Ry. Co.,* 91 Mont. 194, 209, 7 P.2d 919, 925 (1932); *Lightfoot v. City of Springfield,* 361 Mo. 659, 236 S.W.2d 348, 353 (1951); *New England Telephone & Telegraph Co. v. Public Utilities Commission,* 116 R.I. 356, 358 A.2d 1, 8 (1976). The argument for not permitting a retroactive date is that it would have the effect of changing the utility's charges after the service has been consumed by the customer.

■ The courts of this state have provided that in order to compensate for "regulatory lag," the Commission in its discretion may make the new rates effective at any date prior to the issuance of the order but following the attachment of the agency's jurisdiction. *United Gas Public Service Co. v. State of Texas,* 89 S.W.2d at 1103; *Railroad Commission of Texas v. City of Fort Worth,* 576 S.W.2d 899 (Tex.Civ.App. —Austin 1979, writ ref'd n.r.e.). There are no Texas cases articulating the standards for the exercise of this discretion, or any foreign cases since such leeway is not allowed in other states. The *United Gas* and *Fort Worth* cases allow the Commission to use any date in the range, and not merely the earliest date. This discretion exercised by an administrative agency, of course, is not unbridled. The Commission could not simply postpone the effective date of new rates to a point in time after the issuance of its final order.

■ The fact, however, that the date set may not be as early as possible reflects the recognition that elimination of regulatory lag is not an absolute right, but that such relief must be weighed against other factors. The most obvious factor would be any relation back of an increase would mean that customers would be charged for gas that has already been consumed, billed and paid for. Other factors would include any delays in the administrative process caused by the utility and the financial impact on the various parties. A rigid rule as to a certain date could have the effect of unjustly enriching one utility in one case while bankrupting another utility in a second case. We believe a consideration of the effects these matters have is better left within the expertise of the Commission.

The basis of Lone Star's argument is that since the Commission granted the absolute minimum rate allowed by law, each day it required Lone Star to operate under the old rate after it assumed jurisdiction resulted in confiscation of the utility's property in violation of the Constitution. *See* Tex. Const. art. I, § 17; U.S. Const. amend. XIV. If the Commission had granted more than the minimum rate, the effective date of that rate could be deferred without confiscating the utility's property. According to Lone Star, however, when the Commission grants the absolute minimum rate allowed under law, there is no discretion in setting the effective date of the order, as it must be done from the date the Commission acquires jurisdiction. We are unable to find any authority which supports this proposition.

This Court ruled in *Railroad Commission of Texas v. Entex, Inc.,* 599 S.W.2d 292, 295–96 (Tex.1980) that PURA, §§ 39 and 40 provide a range of permissible utility rates. Section 39 sets forth the minimum lawful rate as one which permits the utility to recover its operating expenses plus a reasonable return on its original cost base. Section 40 limits the maximum rate to one which allows the utility a fair return on its fair value. If the rate the Commission sets is too low, whether because of regulatory lag or any other factor, the utility may appeal, and the courts may reverse. Lone Star, however, does not allege any substantial error and does not challenge the rates on appeal; consequently, we express no opinion concerning the adequacy or the method used to determine the rate.

The Commission, in this case, acquired jurisdiction on October 6, 1978, when Lone Star filed its appeal. Lone Star contends that since the Commission had an established practice of making its orders effective the date it acquired jurisdiction, it was required to make the order effective on October 6. Both parties introduced copies of Commission orders in other dockets which supported the trial court's finding

that the Commission had an established practice of relating rates back to the first date the Commission acquired appellate jurisdiction. In many cases, the Commission makes its order effective sixty days after the close of the hearing.

■ The Commission issued its order on February 11, 1980, 492 days after it acquired jurisdiction. The order, however, in an effort to compensate for regulatory lag retroactively set the effective date of its order eleven months earlier, on March 8, 1979. The order represented the Commission's determination that the old rates were inadequate for application only after the March 8, 1979, effective date. This date is eighty-four days after the scheduled day of the hearing which was waived by both parties. Before the completion of his report, the hearing examiner requested additional information from Lone Star, which took Lone Star twenty days to supply. Lone Star considered the requested information to be immaterial; however, we cannot substitute our judgment for that of the Commission.

■ We hold that the Commission did not abuse its discretion in failing to retroactively set the rates to the date it acquired jurisdiction. The Commission, in exercising its discretion, made its order effective over 330 days earlier than its rendition in an effort to compensate Lone Star for regulatory lag. There is no law in this state which required it to do so. *See Carlock v. Public Utility Commission of Texas,* 612 S.W.2d 239 (Tex.Civ.App.—Waco 1981, no writ). It is possible the Commission was guided by the sixty day provision of APA section 16(d) and added twenty extra days determining that utility customers should

not be surcharged for delays in the administrative process caused by one of the parties.

■ Therefore, as long as the rate granted is sufficient under the law, we are not prepared to hold that the lower the rate granted, the earlier the Commission's order must be effective. To do so would require mandatory retroactive rates in certain cases and establish that the utility's right to be compensated for regulatory lag is absolute. Any change in protection for the utility against undue regulatory lag should come from the legislature.

The Texas Legislature recently passed Texas H.B. 593, which will become effective September 1, 1983. This act relates to the powers and duties of the Railroad Commission of Texas. Section 3.05 of the new Gas Regulatory Act [6] provides that the Commission's final order shall be entered not more than 120 days from the date the appeal is perfected. This section further states that in the event the Commission fails to enter its order within 120 days, the schedule of rates proposed by the utility shall be deemed to have been approved by the Commission and effective upon the expiration of the 120-day period. This appears to be the legislature's attempt to compensate gas utilities from undue regulatory lag. Therefore, we limit our opinion to cases arising before the September 1, 1983, effective date of the Gas Regulatory Act.

Accordingly, the judgment of the court of appeals is reversed and the judgment of the district court is affirmed.

---

6. Tex.H.B. 593, 68th Leg. (1983), will be codified as article 6447, § 20, Art. I, § 3.05(e) and provides:

(e) The railroad commission shall hear the appeal de novo based on the test year presented to the municipality, adjusted for known changes and conditions that are measurable with reasonable accuracy, and by its final order, which shall be entered not more than 120 days from the date the appeal is perfected, the railroad commission shall fix such rates that the municipality should have fixed in the ordinance from which the appeal

was taken. In the event that the railroad commission fails to enter its final order within 120 days from the date the appeal is perfected, the schedule of rates proposed by the utility shall be deemed to have been approved by the commission and effective upon the expiration of the 120-day period. Any rates, whether temporary or permanent, set by the railroad commission shall be prospective and observed from and after the applicable order of the railroad commission, except interim rate orders necessary to effect uniform systemwide rates.