**MORAN UTILITIES COMPANY, Appellant,**

v.

**RAILROAD COMMISSION OF TEXAS, Appellee.**

**RAILROAD COMMISSION OF TEXAS, Appellant,**

v.

**MORAN UTILITIES COMPANY, Appellee.**

Nos. 14165, 14187.

Court of Appeals of Texas, Austin.

Aug. 28, 1985.

Rehearing Denied Oct. 2, 1985.

[redacted]

[redacted]

Thomas K. Anson, Vinson & Elkins, Austin, for Moran Utilities Co.

Jim Mattox, Atty. Gen., Jo Campbell, James R. Meyers, Asst. Attys. Gen., Austin, for appellant Railroad Com'n of Texas.

Fernando Rodriguez, Asst. Atty. Gen., Austin, for appellee Railroad Com'n of Texas.

Before SHANNON, C.J., and BRADY and GAMMAGE, JJ.

GAMMAGE, Justice.

Moran Utilities Company [Moran] and the Railroad Commission of Texas [Commission] appeal from the two judgments of the trial court reviewing certain orders of the Commission. We will affirm the judgments in part and reverse the judgments in part and remand the causes.

Moran is a natural gas utility which services industrial consumers of natural gas in and around Conroe, Texas. In 1979, Moran filed with the Commission a statement of intent to increase its existing rural industrial rate pursuant to the Public Utilities Regulatory Act [PURA], Tex.Rev.Civ.Stat.Ann. art. 1446c (Supp.1985). Moran sought to increase its existing rate of $2.46 per MCF to $2.90 per MCF.

When Moran sought this rate increase, eight of Moran's nine industrial customers affected by the proposed rate increase intervened in the Commission proceedings, alleging that Moran had increased its rate from $2.06 per MCF to the current $2.46 per MCF after the effective date of PURA, but without satisfying the mandatory procedures prescribed therein for a rate increase. The Commission severed Moran's rate increase request from the intervenor's complaint and issued two separate orders.

[redacted]

In response to the intervenor's complaint, in Gas Utilities Docket [GUD] No. 2690, the Commission found that Moran had instituted the $2.46 rate in violation of PURA. By ordering Moran to refund to each of the affected customers $.40 per MCF for gas purchased during that period, the Commission effectively reinstituted the $2.06 rate for a period commencing April 12, 1979, the date when the complaint was filed, and ending on May 19, 1980, the effective date of the Commission's rate increase order. The trial court affirmed this order of the Commission, and Moran alone appeals from this judgment.

In GUD No. 1913, the Commission ordered a rate increase in favor of Moran. The order allows Moran a 100% purchase gas adjustment [PGA] clause for all gas purchased by Moran under existing gas purchase contracts. The order further allows Moran a 100% PGA clause on gas purchased under future contracts, provided the new price of gas does not raise the weighted average cost above what it would have been but for the new contracts. The order only limits Moran to a 95% PGA clause as to "that portion of the weighted average cost of gas purchased pursuant to new and existing contracts with non-affiliated companies [that] exceeds the weighted average cost of gas under existing contracts with non-affiliated companies." The Commission further ordered therein that Moran be allowed a 14.5% return to equity. The trial court judgment vacated this order of the Commission, holding that the Commission is required to allow a 100% PGA clause and that the Commission's allowance of 14.5% return to equity was unsupported by substantial evidence. Both parties appeal from this judgment.

*Moran's Points of Error*

By its first point of error, Moran contends that the Commission is without authority to order a refund. It asserts that the Commission has the power only to change rates prospectively, and is limited in that activity by PURA. Moran relies upon

§ 42 of PURA which provides, in pertinent part:

Whenever the regulatory authority ... on complaint by any affected person, finds that the existing rates of any public utility for any service are unreasonable or in any way in violation of any provision of law the regulatory authority shall determine the just and reasonable rates ... to be thereafter observed....

Moran argues that this section only empowers the Commission to prospectively correct rates about which there is a complaint. While we agree with this assertion, we do not agree that the Commission is without power to order a refund.

Texas Rev.Civ.Stat.Ann. art. 6055 (1962) provides:

If any rate or charge for gas or for service or for meter rental or any other purpose pertaining to the operation of said business shall be made or promulgated by any person, firm, or corporation owning or operating any gas pipeline or in the event of an inadequate supply of gas or inadequate service in any respect, a complaint against same shall be filed by any person authorized by the preceding article to file such petition and such complaint is sustained in whole or in part, all persons and customers of said gas pipeline shall have the right to reparation or reimbursement of all excess in charges so paid over and above the proper rate or charge as finally determined by the Commission from and after the date of the filing of such complaint.

■■■ PURA does not expressly repeal this article. *See* Tex.Rev.Civ.Stat.Ann. art. 1446c, § 90(a), *supra.* While § 42 of PURA does not specifically empower the Commission to effect a retroactive rate decrease, neither does it specifically prohibit the Commission from so doing. By contrast, art. 6055, *supra,* does specifically empower the Commission to effect such a retroactive rate decrease. Although a later statute such as PURA may impliedly repeal an earlier statute such as art. 6055, we must, where possible, harmonize and give effect to both statutes. *Barr v. Bernhard,*

562 S.W.2d 844 (Tex.1978); *Carr v. Hunt,* 651 S.W.2d 875 (Tex.App.1983, writ ref'd n.r.e.). Furthermore, old and new statutes which are not positively repugnant must be construed to give effect to both if possible. *Standard v. Sadler,* 383 S.W.2d 391 (Tex. 1964). We hold that § 42 of PURA and art. 6055 are not in conflict and the enactment of PURA did not impliedly repeal art. 6055. The Commission is clearly authorized by art. 6055 to order a rate refund in a proper case. Moran's first point of error is overruled.

In ordering the amount of refund to be made by Moran, the Commission merely reduced Moran's rate during the refund period to the last rate charged by Moran, $2.06 per MCF, prior to the institution of the later rate, $2.46 per MCF, charged in violation of PURA. The trial court affirmed this order of the Commission in its entirety. Moran now complains of this action by the trial court in its points of error two through six.

■■■ Article 6055 does not address a method of calculation of a refund to be ordered thereunder, other than provide that the refund shall be for all amounts in excess of the "proper rate." PURA, on the other hand, not only prescribes the standard that the Commission shall order "a just and reasonable rate" but further provides that the Commission has the statutory duty to insure that all rates ordered by the Commission are just and reasonable. § 38, PURA. Any utility rate set by the Commission at a level which is less than that which is just and reasonable is an impermissible confiscation. *Southwestern Bell Telephone Co. v. Public Utility Commission of Texas,* 615 S.W.2d 947 (Tex.Civ. App.), writ ref'd n.r.e., 622 S.W.2d 82 (Tex. 1981). The Commission here argues that the term "proper rate" as used in art. 6055 should be interpreted to mean the last legal rate. We disagree. The last legal rate may be something less than "just and reasonable," and the Commission may not order a rate which is less than just and reasonable. *Id.* We hold that the trial court erred in affirming the refund order

of the Commission because the Commission did not base the amount of the refund on a rate for the refund period which would be just and reasonable. Moran's second and third points of error are sustained. The judgment of the trial court is reversed and the cause is remanded to the Commission for determination of what the just and reasonable rate would be for the refund period.

Moran next argues there can be no refund because in GUD No. 1913 the Commission found as just and reasonable a rate of $2.74 per MCF based on 1978 operating expense data, which is a rate greater than the illegal rate of $2.46 per MCF charged by Moran during the refund period. We disagree. The just and reasonable rate of $2.74 per MCF was found by the Commission to be a just and reasonable rate to be charged after May 19, 1980. The Commission did not determine a just and reasonable rate for the refund period, and the rate set to be effective on May 19, 1980, is not conclusively a just and reasonable rate for the refund period. Moran's fourth and fifth points of error are overruled.

The Commission contends that Moran waived any error the Commission committed in calculating the amount of the refund because Moran failed to meet its burden of proving what the proper rate should have been during the refund period. *Suburban Utility Corp. v. Public Utility Commission of Texas*, 652 S.W.2d 358 (Tex.1983). The record discloses, however, that Moran supplied the Commission with all of its 1978 data. From this information, the Commission could have calculated the just and reasonable rate to be enforced during the refund period.

■ In its sixth point of error, Moran contends that the Commission erred in not allowing compensation for the expense of "regulatory lag," or the expense Moran incurred because of the length of time consumed in the administrative process. Specifically, Moran seeks to compel the Commission to offset the GUD No. 2690 refund by the amount of the "regulatory lag" expense. While it is within the discretion of the Commission to allow this offset, Moran is not entitled to it as a matter of right. *Railroad Commission of Texas v. Lone Star Gas Co.*, 656 S.W.2d 421 (Tex.1983). Moran has not demonstrated an abuse of discretion by the Commission in this regard. *Id.* Moran's sixth point of error is overruled.

■ In its point of error seven, Moran complains about the length of time the Commission took to set the new rate in GUD No. 1913. Moran further complains that the trial court erred in affirming the Commission's order making the new rate effective 384 days after the effective date requested by Moran. It is well settled in Texas administrative law, however, that an agency is not compelled to act upon a matter within any definite time constraints. *Railroad Commission of Texas v. Lone Star Gas Co., supra.* The record further discloses that this is a very complex case, with voluminous documentary and testimonial evidence. We hold that the Commission did not abuse its discretion in investing the lengthy period it took to set the new rates nor in its setting the effective date of the new rate. *Id.* Moran's seventh point of error is overruled.

By its eighth point of error, Moran asserts that the trial court erred in affirming the Commission's Docket No. 1913 order because the Commission was required to approve Moran's proposed rates without "lengthy full-scale cost of service proceedings." Moran relies upon the following pertinent provisions of § 38(2) of PURA:

Rates charged by a gas utility to an industrial customer for supplying gas under a contract and similar large volume contract customers are just and reasonable and shall be approved by the regulatory authority if the regulatory authority finds that:

(2) the rates in the contract are substantially the same as the rates contained in contracts between the gas utility and two or more other industrial customers contracting under the same or similar conditions of service; ...

During the Commission proceedings, one of Moran's executive officers testified as to the existence of oral contracts with customers other than the intervenors. He further testified that the contracts were made under the same or similar conditions as those with the intervenors and that the rates were identical to the rates then paid by the intervenors.

The Commission is free to judge the credibility of any witness appearing in a Commission proceeding. *City of Frisco v. Texas Water Rights Comm'n,* 579 S.W.2d 66 (Tex.Civ.App.1979, writ ref'd n.r.e.). This should be especially true for a witness with an interest in the Commission proceedings. The trial court did not err in affirming the Commission's order and finding that § 38(2), PURA, was not applicable. Moran's eighth point of error is overruled.

Moran asserts by its ninth point of error that the Commission erred in excluding from the data, upon which the new rate was based, certain expenses borne by Moran. Specifically, Moran complains about the Commission's exclusion of evidence of an account which Moran used for auditing, engineering, legal services, and data processing services. The Commission asserts, and the record confirms, that Moran did not establish the extent to which those expenses would be recurring expenses. Moran bears the burden of proving all expenses upon which the rate will be set. *Suburban, supra.* We overrule Moran's ninth point of error.

In its tenth point of error, Moran contends that the Commission erred in refusing to permit Moran to recover interest on its rate-case expenses. Moran cites no authority, statute, procedural rule, or otherwise to support its position that it is entitled as matter of right to recover interest in this situation. As the Commission correctly asserts, the expense incurred in a rate case is just one of many factors the Commission may consider in setting a new rate. *Suburban, supra.* The Commission did not abuse its discretion in refusing to allow Moran to recover interest on its rate-

case expenses. Moran's tenth point of error is overruled.

Finally, Moran asserts by its eleventh point of error that the Commission erred in refusing to include a significant risk premium in the figure calculated for Moran's return to equity. Again, Moran cites no authority to indicate that it is entitled to have the Commission include a significant risk premium in the calculation of its return to equity. Moran contends that this refusal constituted error because there is no record of evidence to support the Commission's failure or refusal to allow the significant risk premium. The Commission argues that the concept of a significant risk premium and the amount to be allowed in each instance is a matter to be committed to the regulatory expertise and sound discretion of the Commission. We agree. We will not substitute our judgment for the expert judgment of the Commission. *Lone Star, supra.* Moran's eleventh point of error is overruled.

### The Railroad Commission's Points of Error

The Commission complains of the remainder of the judgment of the trial court by two points of error. In its first point of error, the Commission contends that the trial court erred in holding that the Commission was compelled to allow a 100% PGA clause on future non-negotiated contracts. We agree.

The Purchase Gas Adjustment clause allows a utility to pass along to the ultimate consumer the increased cost of gas which it must purchase. The purpose of a PGA clause is to provide incentive to a utility which purchases gas in a competitive market to purchase gas at the lowest possible price. This Court has recently held that the Commission is empowered to order a PGA clause of less than 100% of the fluctuating price of gas the utility must purchase. *Southern Union Gas Co. v. Railroad Commission of Texas,* 692 S.W.2d 137 (Tex.App.1985, writ ref'd n.r.e.).

In reply, Moran relies upon this Court's holding in *Railroad Commission of Texas*

*v. High Plains Natural Gas Co.,* 613 S.W.2d 46 (Tex.Civ.App.) writ ref'd n.r.e., 628 S.W.2d 753 (Tex.1981). At the time this case was submitted, Moran did not have the benefit of this Court's explanation of the *High Plains* case in *Southern Union Gas, supra. High Plains* compels the Commission to allow a 100% PGA clause only if the utility establishes that it does not buy its gas in a competitive market. It is clear from the record in this case that Moran does buy its gas in a competitive market and has business associations with affiliated and non-affiliated corporations involved in all segments of the gas utility industry. Furthermore, the PGA is limited to 95% only on future, non-negotiated contracts.

In view of the foregoing, and our opinion in *Southern Union Gas, id.,* we find that the trial court erred in concluding that the Commission must allow a 100% PGA clause. The Commission's first point of error is sustained and the judgment of the trial court in this respect is reversed.

By its second point of error, the Commission asserts that the trial court erred in holding that the Commission was precluded, as a matter of law, from allowing a 14.5% return to equity based upon similar returns allowed other gas utilities.

 The Commission must allow a rate of return sufficient to preserve the financial integrity of the utility. *Railroad Commission of Texas v. Houston Natural Gas Corp.,* 289 S.W.2d 559 (Tex.1956). It is also well settled that the Commission's calculation of the rate of return in a rate-setting case must find support in the record. *Railroad Commission of Texas v. Lone Star Gas Co.,* 618 S.W.2d 121 (Tex. Civ.App.1981, no writ); *Railroad Commission of Texas v. Lone Star Gas Co.,* 611 S.W.2d 911 (Tex.Civ.App.1981, writ ref'd n.r.e.); *Railroad Commission of Texas v. Lone Star Gas Co.,* 611 S.W.2d 908 (Tex. Civ.App.1981, writ ref'd n.r.e.). The only evidence adduced in the Commission proceedings concerning the proper rate of return to be granted Moran was the testimony of Moran's rate consultant, who testi-

fied as an expert witness. He testified that in formulating his opinion, he compared the recent 17.6% return that the Commission had recently granted to Entex, Inc. for gas distribution service in a nearby comparably sized geographic area. He concluded that Moran should be granted a 20% rate of return to compensate for the fact that Moran is a smaller utility than Entex, Inc. and has additional risks. This testimony was not rebutted, nor was any other evidence of the appropriate rate of return to be granted Moran adduced in the Commission proceedings.

The hearings examiner, in the proposal for decision, based the 14.5% rate of return recommended therein on the recent rate of returns granted to larger publicly traded utilities. The examiner concluded that this was appropriate "because Moran has less business and financial risks than most small utilities." The examiner concluded that the larger publicly-held companies had recently been granted 13.5% to 14.5% rates of return and then determined that Moran should be granted a 14.5% rate of return.

There is no further explanation in the proposal of why these large utilities are comparable to Moran. Moran was never given an opportunity to attempt to rebut this assumption by argument or the submission of additional evidence. The trial court, accordingly, reversed this portion of the Commission's order in GUD No. 1913.

 This Court addressed this precise question in *Railroad Commission of Texas v. Lone Star Gas Co.,* 611 S.W.2d 911 (Tex.Civ.App.1981, writ ref'd n.r.e.). In that case this Court held that an agency may take official notice of a matter which is within its specialized knowledge, provided all parties are given adequate notice of the facts the agency proposes to notice, and all parties are given an adequate opportunity to show the inaccuracy of the noticed information. *Id.* at 913. We overrule the Commission's second point of error.

The judgments of the trial court are affirmed in part and reversed in part. The

causes are remanded to the trial court with instructions that the causes be remanded to the Railroad Commission for determination of the just and reasonable rate upon which any refund is to be made in GUD No. 2690, and for determination of the appropriate rate of return to be granted Moran in its rate increase in GUD No. 1913.