**RAILROAD COMMISSION OF TEXAS, Petitioner,**

v.

**MORAN UTILITIES COMPANY, Respondent.**

No. C–4737.

Supreme Court of Texas.

May 6, 1987.

Jim Mattox, Atty. Gen., Karen Pettigrew, Fernando Rodriguez, Asst. Attys. Gen. and Chief of the Energy Div. Larry J. Laurent, Austin, for petitioner.

Thomas K. Anson, Hays & Anson, Austin, P.M. Schenkkan and Harry M. Reasoner, Vinson & Elkins, Austin, for respondent.

OPINION

HILL, Chief Justice.

This cause concerns the validity of two orders issued by the Texas Railroad Commission which addressed the rate Moran Utilities Company charged its industrial customers.

Moran is a natural gas utility that sells gas in and around Conroe, Texas. In August of 1976, Moran was charging its industrial customers $2.06 per MCF of gas. On September 1, 1976, the Public Utility Regulatory Act (PURA) went into effect.[1] PURA provides that "[n]o utility company may make changes in its rates except by filing a statement of intent ... at least 35 days prior to the effective date of the proposed changes." PURA, TEX.REV.CIV. STAT.ANN. art. 1446c, § 43(a) (Vernon 1980). Despite this statutory proscription, Moran raised its industrial rate to $2.46 per MCF on September 1, 1976 without filing a statement of intent with the Commission.

On March 16, 1979, Moran notified the Commission that it intended to increase its industrial rate from $2.46 to $2.90 per MCF as of May 1, 1979. Pursuant to its authority under PURA, TEX.REV.CIV.STAT. ANN. art. 1446c, §§ 43(c), (d) (Vernon 1980), the Commission suspended Moran's proposed rate increase and initiated proceedings to determine whether, and to what extent, Moran's rate should be increased. On April 12, 1979, seven of Moran's industrial customers filed a complaint with the Commission that challenged the legality and reasonableness of the September 1, 1976 rate increase. The Commission severed Moran's proposed rate increase from the customers' complaint and considered the rate increase in Gas Utilities Docket [GUD] No. 1913 and addressed the customers' complaint in GUD No. 2690.

In GUD No. 1913, the Commission authorized Moran to increase the rate it charged its industrial customers. In GUD No. 2690, the Commission ordered Moran to

---

1. Although gas utilities are currently governed by the Gas Utility Regulatory Act, TEX.REV. CIV.STAT.ANN. art. 1446e (Vernon Supp.1987), this cause involves orders issued by the Railroad Commission in 1980 and is therefore governed by PURA as it existed at that time.

refund the money it had collected in excess of $2.06 per MCF from its industrial customers between April 12, 1979 and May 19, 1980. The trial court reversed and remanded GUD No. 1913 to the Commission for further proceedings and affirmed GUD No. 2690. Both parties appealed from the trial court's judgment. The court of appeals affirmed the judgment of the trial court with regard to GUD No. 1913 but reversed and remanded GUD No. 2690 to the Commission for further proceedings. 697 S.W.2d 447. We affirm the judgment of the court of appeals with regard to GUD No. 1913 and reverse the judgment of the court of appeals as to GUD No. 2690.

## GUD No. 1913

■ The Commission issued GUD No. 1913 on May 19, 1980. The order, which became effective on May 19, 1980, authorized Moran to increase its industrial rate to $2.74 per MCF. The Commission's order was based, in part, on the hearing examiner's conclusion that Moran should receive a return of 14.5% on its equity. Moran argued, and the trial court and the court of appeals concurred, that this conclusion was not supported by substantial evidence. We agree.

The method used by the Commission to calculate a utility's return on equity must be supported by substantial evidence. Administrative Procedure and Texas Register Act [APTRA], TEX.REV.CIV.STAT.ANN. art. 6252–13a § 19(e) (Vernon Supp.1987): *see Railroad Commission of Texas v. Lone Star Gas Co.*, 611 S.W.2d 908, 911 (Tex.Civ.App.—Austin 1981, writ ref'd n.r. e.). The Commission's methodology is supported by substantial evidence when it is (1) supported by evidence introduced at the hearing, or (2) judicially noticed by the hearing examiner before or during the hearing, or (3) set forth in the agency's substantive rules. APTRA, TEX.REV. CIV.STAT.ANN. art. 6252–13a, §§ 5, 13(h), 14(q) (Vernon Supp.1987); *Railroad Commission of Texas v. Lone Star Gas Co.*, 611 S.W.2d 911, 913–14 (Tex.Civ.App.— Austin 1981, writ ref'd n.r.e.).

During the hearing before the examiner, Moran's expert witness testified that Moran should receive a return of 20% on its equity. The expert reached this conclusion by comparing Moran with Entex Incorporated, a utility that was allowed to recover 17.6% on its equity in 1977. Comparing these utilities, the expert concluded that Moran should receive 2.4% more than Entex because Moran had more business and financial risks than Entex. Although the expert only compared Moran with Entex, he conceded Moran's return could be calculated by comparing Moran with other utilities. No other witness testified as to the return Moran should have received on its equity.

The hearing examiner decided that Moran should receive the same return as the large publicly-traded utilities "[b]ecause Moran [had] less business and financial risk than most small utilities." Then, after judicially noticing that the Commission had recently authorized large utilities to recover between 13.5% and 14.5% on their equity, the examiner concluded that Moran should receive 14.5% on its equity. The Commission adopted the examiner's conclusions and now contends that the method used by the examiner to calculate Moran's return was supported by the testimony of Moran's expert witness. We disagree.

Under the methodology of Moran's expert, Moran should be compared to other utilities and, if Moran had greater or lesser business and financial risks than the utilities it was actually compared with, Moran should be assigned a correspondingly higher or lower return than those utilities received. On the other hand, the examiner's methodology gave Moran the same return as the large utilities because Moran had less risks than "most small utilities." The examiner did not compare Moran with the large utilities even though Moran's return was based on the return received by those utilities. Thus, the expert's method based Moran's return on the return received by the utilities actually compared with Moran while the examiner's method compared Moran with "most small utilities" and based Moran's return on the large utilities return. The method used by the examiner

was therefore not supported by the expert's testimony. Nor was the examiner's method judicially noticed before or during the hearing. Neither did the Commission's substantive rules set forth the method used by the examiner.

The method used by the Commission to calculate Moran's return was therefore not supported by substantial evidence. Thus, we agree with the court of appeals that GUD No. 1913 must be remanded to the Commission for a proper calculation of the rate Moran should be allowed to charge its industrial customers. APTRA, TEX.REV. CIV.STAT.ANN. art. 6252–13a, § 19(e) (Vernon Supp.1987); *see Railroad Commission of Texas v. Lone Star Gas Co.,* 611 S.W.2d 908, 911.

### No. 2690

The Commission issued GUD No. 2690 on July 12, 1982. The order made the following conclusions of law: (1) Moran violated § 43(a) of PURA when it raised its industrial rate on September 1, 1976 without filing a statement of intent; (2) the legally established rate for the gas sold by Moran between September 1, 1976 and May 19, 1980 was $2.06 per MCF; and (3) the Commission was authorized by TEX.REV.CIV. STAT.ANN. art. 6055 (Vernon 1962) to "order refunds to all affected customers of the amounts charged in excess of the legally established rate, from April 12, 1979, the date of the first complaint, to May 19, 1980, the date of rates legally established by the Commission." Then, relying on its authority under Article 6055, the Commission ordered Moran to refund the money it had collected in excess of $2.06 per MCF from its industrial customers between April 12, 1979 and May 19, 1980 (the refund period).[2] The trial court affirmed the Commission's order; however, the court of appeals reversed and remanded the order for further proceedings because it concluded that the

Commission's refund order was not authorized by Article 6055. We disagree.

Article 6055 provides:

If any rate or charge for gas ... shall be made or promulgated by any person, firm or corporation owning or operating any gas pipeline ... and complaint against same shall be filed by any person authorized ... to file such petition and such complaint is sustained in whole or in part, all persons and customers of said gas pipeline shall have the right of reparation or reimbursement of all excess in charges so paid over and above the *proper rate* or charge as finally determined by the Commission from and after the date of the filing of such complaint. (Emphasis added).

The Commission construed the term "proper rate" to mean the legally established rate for the gas sold during the refund period and therefore ordered Moran to refund the money it had collected in excess of that rate. The court of appeals, however, construed "proper rate" to mean a "just and reasonable rate" for the gas sold during the refund period. 697 S.W.2d at 450. The court of appeals accordingly determined that Article 6055 only authorized the Commission to order refunds of money collected in excess of the just and reasonable rate. *Id.* Then, after concluding that the reasonable rate for the gas sold during the refund period might exceed the legal rate for that gas, the court of appeals reversed and remanded GUD No. 2690 for a recalculation of the amount Moran must refund. *Id.* at 450–51. We cannot agree with this result.

A statute must be harmonized with other relevant statutes, if possible. *State v. Standard Oil Co.,* 130 Tex. 313, 329, 107 S.W.2d 550, 559 (1937). Because PURA and Article 6055 both regulate the rates utilities can charge their customers, they must be harmonized if possible.

---

**2.** Although the attorney general argues that the Commission could have also relied on other statutes to extend the refund period from September 1, 1976 to May 19, 1980, the Commission elected to limit the refund period from April 12, 1979 to May 19, 1980. The only issue presented by this cause is whether the refund ordered by the Commission was authorized by TEX.REV. CIV.STAT.ANN. art. 6055 (Vernon 1962).

■ PURA established the conditions and procedures that a utility must comply with before it can change its rates. PURA, TEX.REV.CIV.STAT.ANN. art. 1446c, § 43(a)–(f) (Vernon 1980). A rate change is *illegal* if instituted before these requirements are satisfied. *Id.* at § 31. An illegal rate is, of course, improper. Thus, we hold that the term "proper rate" in Article 6055 must be construed as the rate legally established under PURA. Construing Article 6055 in any other manner would unnecessarily create disharmony between PURA and Article 6055.

■ Conditioning a utility's right to receive a rate above the legally authorized rate on its compliance with reasonable regulatory procedures is not an unconstitutional confiscation of the utility's property rights. *See Public Utility Commission of Texas v. Pedernales Electric Cooperative, Inc.*, 678 S.W.2d 214, 222 (Tex.App.—Austin 1984, writ ref'd n.r.e.). Thus, until a utility complies with PURA's requirements, it is prohibited from charging more than the legally established rate even if the reasonable value of its gas exceeds the legal value of that gas. We therefore hold that the Commission is not prohibited by the Constitution from ordering utilities to refund the money they charged in excess of the legally established rate.

Accordingly, we affirm the judgment of the court of appeals as to GUD No. 1913 and the order is remanded to the Commission for a proper determination of the rate Moran should be authorized to charge its industrial customers. We also reverse the judgment of the court of appeals with regard to GUD No. 2690 and affirm the judgment of the trial court with regard to that order.

MAUZY, J., files a concurring and dissenting opinion in which SPEARS and KILGARLIN, JJ., join.

MAUZY, Justice, concurring and dissenting.

I concur in the portion of the court's opinion that addresses the Railroad Commission's order in Gas Utilities Docket No. 2690. However, I dissent from the portion that addresses the order in Gas Utilities Docket No. 1913.

In arriving at a rate of return, the hearings examiner applied the same methodology that was used by Moran's own expert witness. The expert compared the recent 17.6 percent rate of return that the Commission had granted to Entex, Inc. and testified that Moran should be granted a 20 percent rate because it was a smaller utility with more risks. The expert admitted that if he had used a different utility for comparison, he could have arrived at a lower rate of return.

Thus, Moran's own witness relied upon a rate of return finding made by the Commission in another case. The hearings examiner also relied upon rates of return awarded in other cases before the Commission; however, she used findings made in cases involving utilities other than Entex. Because the findings made in other cases before the Commission are a part of the public record, the hearings examiner could take judicial notice of them. Thus, these findings from other cases in conjunction with the expert's testimony on methodology constitute substantial evidence to support the 14.5 percent rate of return as calculated by the hearings examiner.

I would therefore reverse the judgment of the court of appeals on this point and affirm the order of the Railroad Commission.