**Joe Davis BALLENGER, W.T. Ballenger and Katherine Ethel Ballenger Fairchild, Appellants,**

**v.**

**Robert B. BALLENGER, Jr., Appellee.**

No. 13–84–340–CV.

Court of Appeals of Texas,

Corpus Christi.

March 21, 1985.

Jeffrey Jackson, Harlingen, for appellants.

Randolph K. Whittington, Harlingen, Hilton H. Howell, Michael Vaughn, Waco, for appellee.

Before NYE, C.J., and SEERDEN and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from an order granting a temporary injunction in favor of appellee, Robert B. Ballenger, Jr., and against appellants, Joe Davis Ballenger, W.T. Ballenger and Katherine Ethel Ballenger Fairchild, enjoining appellants from distributing to themselves any portion of the corpus of three trusts created by the will of Ethel Ballenger, deceased. We reverse and render judgment dissolving the temporary injunction.

Ethel Ballenger died in May, 1963. In her will, she created four equal trusts for the benefit of her four surviving children (the three appellants and appellee's father, Robert B. Ballenger, Sr.) and contingently to her grandchildren by birth. These trusts are referred to as the Joe Davis Ballenger Trust; the W.T. Ballenger Trust; the Robert Burton Ballenger Trust; and the Katherine Ethel Ballenger Fairchild Trust. Upon Ethel's death in 1963, her husband, Joe G. Ballenger, became trustee of the four trusts and acted as such until his death in 1971. Following the death of the father, each of the four children resigned (ostenibly for tax reasons) as co-trustee of his/her own trust such that each trust now has three co-trustees, with appellants representing a majority of the three co-trustees of all four trusts.

The will of Ethel Ballenger provides that each of the four trusts shall be held, managed and controlled by the co-trustees for the use and benefit of the child for which the respective trust is named, and, upon that child's death, all property *"remaining"* in each of said trusts shall pass to and vest in fee simple title to the grandchildren "(by birth but not by adoption) in equal portions per capita and not per stirpes." (Emphasis added.)

On April 6, 1984, appellants delivered a letter to Robert B. Ballenger, Sr., who is one of the three co-trustees for each of their trusts, stating their intentions to exercise their "sole discretion," pursuant to Section (6) of the will, to distribute to themselves approximately $200,000.00 from the principal and corpus of each of their trusts (i.e., a total of $604,550.00).[1] Section (6) of Ethel Ballenger's will provides, in pertinent part:

"... The trustee or trustees shall also have sole discretion as to the distribution of the corpus of my estate, *if the income is insufficient for the care, comfort and support of any of the beneficiaries of the respective trusts.*" (Emphasis added.)[2]

Robert B. Ballenger, Sr., dissented from the proposed action on the basis that he thought that they all had "an absolute obligation, as trustees, to the other beneficiaries of the four trusts to preserve the corpus of the trusts to vest in them in accordance with the terms of our mother's will." He also advised appellants that their stated purposes for utilization of the corpus were not included in their mother's contemplation; that each had adequate means from trust income and other sources; and that the trust income had not been "insufficient" so as to authorize invasion of the corpus. There was no dispute among the parties that the four children of Ethel Ballenger were each entitled to receive all the *income* generated by his/her trust during their respective lifetimes.

---

1. The exact purposes for which each appellant intended to expend the funds were set out in attached schedules and included: attorneys and accountants' fees; installation of residential security systems; repairs and additions to their homes; mortgage payments and other indebtedness; purchasing new automobiles; real estate payments; and payments on income taxes.

2. In connection with this provision, paragraph 14 of the will specifically authorizes the trustees the unrestricted power to "grant, sell, convey, mortgage, control and lease and otherwise dispose" of all her property.

Appellee, Robert B. Ballenger, Jr. (grandson), is the natural son of Robert B. Ballenger, Sr., and a possible remainderman under the will. He intervened in the lawsuit already pending between appellants as plaintiffs and his father as defendant. He subsequently filed an Intervenor's Application for Injunctive Relief in which he asserted that, "unless plaintiffs are immediately restrained, without notice, from making the intended distributions of corpus, they will substantially deplete and dissipate the assets of the trusts and the interests therein of Intervenor and the other natural grandchildren of Joe G. and Ethel Ballenger."

On April 12, 1984, the trial court granted an ex parte temporary restraining order preventing appellants from distributing corpus from any of the four trusts for "care and support" [3] or taking any action as trustees pending a hearing on injunctive relief. This temporary restraining order was twice extended by agreement of the parties. Subsequent to a hearing held on August 24, 1984, a second trial court granted the temporary injunction on the following terms:

"IT IS THEREFORE, ORDERED that Joe Davis Ballenger, W.T. Ballenger, and Katherine Ethel Ballenger Fairchild, Plaintiffs, should be and *are hereby commanded forthwith to desist and refrain from distributing or causing to be distributed to themselves or any other person any portion of the principal or corpus* of the Joe Davis Ballenger Trust, the W.T. Ballenger Trust, or the Katherine Ethel Ballenger Fairchild Trust *except upon a prior order of the Court determining that such distribution is necessary for the care, comfort* and support of the proposed distributee, and that the income of the appropriate trust and proposed distributee are insufficient to meet such necessary care, comfort and support." (Emphasis added.)

The trial court's order of August 31, 1984 confirmed the previously set date for trial on the merits on October 1, 1984. For various reasons, trial was not held on this date, and this family dispute remains unsettled. Appellants appeal from the above order granting the temporary injunction. *See* TEX.REV.CIV.STAT.ANN. art. 4662 (Vernon Supp.1985).

▆▆▆ A trial court is clothed with broad discretion in determining whether to grant or to deny a temporary injunction. *Transport Company of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549 (1953); *Ogden v. Coleman*, 660 S.W.2d 578 (Tex.App.—Corpus Christi 1983, no writ). At a hearing on a temporary injunction, the only issue before the trial court is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending trial on the merits. *Davis v. Huey*, 571 S.W.2d 859 (Tex.1978); *Diesel Injection Sales & Service, Inc. v. Gonzalez*, 631 S.W.2d 193 (Tex.App.—Corpus Christi 1982, no writ).

▆▆▆ Our review of the granting or denying of a temporary injunction is limited to a determination of whether there has been a clear abuse of discretion by the trial court in granting or denying the interlocutory order. *State v. Southwestern Bell Telephone Co.*, 526 S.W.2d 526 (Tex.1975); *Swanson v. Grassedonio*, 647 S.W.2d 716 (Tex.App.—Corpus Christi 1982, no writ). The appellate court may not substitute its judgment for that of the trial court. *Texas Foundries, Inc. v. International Molders and Foundry Workers' Union*, 151 Tex. 239, 248 S.W.2d 460 (1952). Also, where, as here, no findings of fact or conclusions of law were filed, the trial court's judgment must be upheld on any legal theories supported by the record. *Seaman v. Seaman*, 425 S.W.2d 339 (Tex.1968); *Bank of Southwest v. Harlingen National Bank*,

---

**3.** At the hearing on the temporary injunction, counsel for appellee corrected what he contends was a mistake in appellee's earlier sworn pleading; that the trustees (appellants and Robert B. Ballenger, Sr.) had each renounced their discretion to distribute corpus of the trusts for purposes related to the "comfort" of any beneficiary. Following the hearing, the trial court modified the terms of the temporary injunction to include "care, *comfort* and support."

662 S.W.2d 113 (Tex.App.—Corpus Christi 1983, no writ).

■ In order for a party to secure a temporary injunction, he must plead and prove a probable right to recovery and a probable injury if temporary equitable relief is denied. *Transport Company of Texas v. Robertson Transports,* 261 S.W.2d at 551. The applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. *Sun Oil Company v. Whitaker,* 424 S.W.2d 216 (Tex.1968); *Irving Bank & Trust Co. v. Second Land Corp.,* 544 S.W.2d 684 (Tex. Civ.App.—Dallas 1976, writ ref'd n.r.e.).

In their first and second points of error, appellants assert that the trial court erred, as a matter of law, in granting the temporary injunction because appellee has an adequate remedy at law (i.e., damages) and also because appellee failed to show any irreparable injury.

■ It is well settled that injunctive relief will not be granted unless the applicant has shown that irreparable injury will result if such relief is not afforded and that the applicant has no adequate remedy at law for damages which may result pending an outcome of the litigation. *Bank of the Southwest v. Harlingen National Bank,* 662 S.W.2d at 116; *International Harvester Credit Corp. v. Rhoades,* 363 S.W.2d 397 (Tex.Civ.App.—Austin 1962, no writ). The test for determining whether an existing remedy is adequate is whether such remedy is as complete and as practical and efficient to the ends of justice and its prompt administration as is equitable relief. *Brazos River Conservation & Reclamation District v. Allen,* 141 Tex. 217, 171 S.W.2d 847 (1943); *Long v. Castaneda,* 475 S.W.2d 578 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.). For the purposes of injunctive relief, no adequate remedy at law exists if damages are incapable of calculation or if defendant is incapable of responding in damages. *Bank of the Southwest v. Harlingen National Bank,* 662 S.W.2d at 116.

Appellants initially point out that the proposed $600,000.00 distribution of trust corpus is in the form of certificates of deposit and that there is no sale of trust assets involved. Appellants argue that, in the event that it was ultimately determined at a trial on the merits that they were not entitled to distribute funds representing trust corpus as proposed, appellee's damages would be "liquidated and capable of exact calculation in terms of dollars and cents." Further, appellants contend and rely on *Bank of the Southwest v. Harlingen National Bank* as their authority that temporary injunctive relief cannot be granted where the pleadings and evidence clearly show that appellants are capable of responding in damages for any unwarranted distributions of corpus. 662 S.W.2d at 116.

Appellee, on the other hand, contends that *Bank of the Southwest* is distinguishable from the instant case. He argues that a suit at law for money damages (i.e., $604,550.00 plus statutory interest), under the facts of this case, is not an adequate remedy because the damages resulting from the wrong sought to be enjoined are not reasonably computable in dollars or readily capable of calculation. Appellee asserts that the function of the trusts is that the principal is to be held, managed and controlled "for the purpose of making the same produce all the income, rents and profits as possible." He contends that, if appellants proceed with their proposed withdrawal of corpus, under their discretionary power, the amount of *income* which could be earned would be diminished. Thus, appellee concludes that, even assuming appellants are presently solvent, appellee (and the other remaining beneficiaries) would suffer an irreparable injury absent temporary injunctive relief and that no remedy at law will provide as "efficient, practical, complete and prompt relief as will enjoining appellants, pending suit, from depleting the *liquid* assets of the trust corpus *for the purposes contemplated.*" See *Baucum v. Texam Oil Corp.,* 423 S.W.2d 434 (Tex.Civ.App.—El Paso 1967, writ ref'd n.r.e.).

■ One of the primary issues to be determined by the trier of fact is the testatrix' intended meaning of the term "comfort," along with "care" and "support," as used in paragraph 6 of the will, as well as the meaning of the limiting phrase, "if the income is insufficient." Appellee does not appear to challenge the adequacy of money damages as an effective remedy in the event of a distribution of corpus for the "care" and "support" of any of the appellants. Rather, the thrust of his argument is that, in his opinion, the appellants are already financially comfortable; and, therefore, the alternate remedy at law for damages is inadequate to provide complete redress to all interested parties. We see no distinction, under the facts of· this case, between the available monetary remedy for an alleged wrongful transfer of cash (whatever the amount may be), whether it be for stated purposes related to the care or comfort or support for the primary beneficiaries.

We agree with appellants' contentions that appellee has failed to show that appellants are insolvent or unable to respond in damages for any wrongful distributions made by them from the trusts in question. At the hearing for temporary injunctive relief, appellee presented evidence of the appellants' adjusted gross incomes for the years 1977–1982, based on their individual tax returns. Appellee also offered evidence of the amounts of trust income distributed to each of the four beneficiaries for the years 1977 through 1983.

· Appellants, in turn, offered evidence that the proposed distributions, as listed in their April 6, 1984 letter, were necessary and appropriate for their care, comfort and support. Appellant, Katherine Fairchild, testified that each of the appellants has substantial assets in Cameron County, Texas, which would be available to respond to any judgment against them should it ultimately be determined at a trial that appellants, as majority trustees, did not have a right to distribute the proposed corpus of the various trusts.

■ We find from the record that any damages that might ensue are capable of exact calculation. The proposed distribution of trust corpus involves a distribution of *cash* which can be readily replaced with other money (plus statutory interest) should it be determined that appellants, acting as trustees, abused their discretion and made an unwarranted distribution. *See Bank of the Southwest v. Harlingen Bank*, 662 S.W.2d at 116. This is not a case in which the conduct sought to be enjoined affects property that is unique in its nature or in the character in which it is being used, such as land, cattle or precious jewels. *See Swanson v. Grassedonio*, 647 S.W.2d 716 (Tex.App.—Corpus Christi 1982, no writ); *Greater Houston Bank v. Conte*, 641 S.W.2d 407 (Tex.App.—Houston [14th Dist.] 1982, no writ); *Thomas v. Allis*, 389 S.W.2d 109 (Tex.Civ.App.—Tyler 1965, no writ). Appellee's own argument that appellants have joined together to "deplete the *liquid* assets of the trust corpus," supports the conclusion that the damages, if any, are capable of exact calculation. Any harm which appellee or any other contingent remainderman might possibly suffer as a result of a possible wrongful distribution of corpus in the form of cash can be adequately cured by monetary damages, regardless of the passage of time between entry of a judgment and satisfaction thereof. *See Hancock v. Bradshaw*, 350 S.W.2d 955 (Tex.Civ.App.—Amarillo 1961, no writ).

■ The evidence presented failed to show irreparable injury or the absence of an adequate remedy at law. *See Ballenger v. Ballenger*, 668 S.W.2d 467 (Tex.App.— Corpus Christi 1984, writ dism'd w.o.j.); *International Harvester Credit Corp. v. Rhoades*, 363 S.W.2d 397 (Tex.Civ.App.— Austin 1962, no writ). The record shows that appellants are solvent and capable of responding in damages for any wrongful acts which appellants may be held to have committed against appellee. Therefore, even if all of the facts alleged by appellee in his petition for injunctive relief are ultimately found to be true by the trier of facts, the granting of the temporary injunction constituted an abuse of the discretion-

ary power of the trial court. *Bank of the Southwest v. Harlingen National Bank,* 662 S.W.2d at 116. Appellants' first two points of error are sustained.

Because of the highly emotional nature of this family dispute, we believe that it is appropriate to address some additional assertions of the parties concerning the temporary injunction. In their fifth point of error, appellants contend that the trial court erred, as a matter of law, in granting appellee a temporary injunction because the order altered, rather than maintained, the status quo. Moreover, appellants contend that the order is void on its face because the trial court has "rewritten the will of Ethel Ballenger and substituted its judgment for that of the named trustees." Appellee has responded to appellants' contentions by insisting that the trial court's order granting the injunctive relief serves only to preserve the status quo of the trust corpus of the three trusts as it existed at the time the dispute arose and holding all matters in connection therewith in abeyance pending trial. *See State v. Friedmann,* 572 S.W.2d 373 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Saenz v. Lackey,* 522 S.W.2d 237 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.).

Appellee relies heavily on the fact that, prior to April 1984, at which time appellants gave notice of their intent to distribute trust corpus to themselves, there has never been a distribution of corpus since the creation of the testamentary trusts. Appellee contends, therefore, that the present order restraining appellants from "depleting the principal of three of the Ballenger trusts pending trial when the very issue concerns their power to do so, and when the principal has remained intact since the death of Ethel Ballenger until the institution of the present controversy, preserves and protects the status quo."

The status quo has been defined as the last, actual, peaceable, non-contested status that preceded the pending controversy. *Janus Films, Inc. v. City of Fort Worth,* 163 Tex. 616, 358 S.W.2d 589 (1962); *Transport Co. of Texas v. Robertson Transports,* 152 Tex. 551, 261 S.W.2d 549 (1953). We are mindful that, prior to appellee's application for injunctive relief, there has not been any exercise of the discretionary powers expressly granted to the trustees for the distribution of corpus pursuant to section 6 of the will. We should not be, nor are we, now concerned with evaluating appellants' proposed conduct as trustees or determining the extent of their discretionary powers to distribute corpus in the event the income is insufficient for the care, comfort and support of any of the beneficiaries of the respective trusts. The action under appellate review here is the exercise by the trial court of its discretionary power to deprive the trustees of their right to exercise their discretion in distributing corpus absent prior court approval.

We conclude that the trial court abused its discretion in several respects. Its order went far beyond the maintenance of the status quo. It is settled law that a court will not decide disputed ultimate fact issues in a hearing on an application for a temporary injunction; nor will a temporary injunction issue if the applicant would thereby obtain substantially all the relief which is properly obtainable in a final hearing. *Texas Foundries, Inc. v. International Molders and Foundry Workers' Union,* 248 S.W.2d at 464; *Ballenger v. Ballenger,* 668 S.W.2d at 469; *Dallas Independent School District v. Daniel,* 323 S.W.2d 639 (Tex.Civ.App.—Dallas 1959, writ ref'd n.r.e.).

In the present case, appellee and the additional intervenors (the living grandchildren by birth), in their original petition (counterclaim), have sought a declaratory judgment for a construction of various provisions of the will of Ethel Ballenger as they relate to the four trusts. At issue, among others, will be the extent of appellants' power, acting as co-trustees, to exercise their sole discretion in determining that the income is insufficient for the *care, comfort* and *support* of the respective lifetime beneficiaries, and, therefore, effect a distribution of corpus.

At the hearing on the temporary injunction, appellee alleged that appellants have "conspired together as the lifetime income beneficiaries in order to destroy the trusts and subvert their fiduciary duties, contrary to the intentions of the testatrix." Appellee further charged that appellants are attempting to remove the trust assets and place them in their personal estates so as to ensure that appellants' *adopted* children will share ultimately in the trusts' assets, along with the natural grandchildren.[4] All of this is speculative. The appellants introduced testimony to the effect that they were elderly and each was having health problems. Appellant Katherine Fairchild testified that they, the co-trustees, honestly believed that the proposed distribution of money was appropriate for their "comfort," as contemplated by the trust agreement. She also negated appellee's charges of fraudulent intentions on their part by stating that the reason they wrote Robert Ballenger, Sr., in advance was to let him know their plans for distribution of the cash. There is no doubt that the appellants could have distributed the assets without Robert B. Ballenger, Sr.'s prior knowledge or consent.

■ We find that the evidence presented, at the very least, raised material disputed issues of fact for the trier of facts. It was error for the trial court to make a finding in advance of a trial on the merits that the income is not insufficient for the care, *comfort* and support of any of the beneficiaries and, by so doing, deprived appellants of the right to exercise their "sole discretion" in distributing corpus. *See Ballenger v. Ballenger*, 668 S.W.2d at 469; *Dallas Independent School District v. Daniel*, 323 S.W.2d 639 (Tex.Civ.App.— Dallas 1959, writ ref'd n.r.e.).

■ We further find that the trial court erred in disturbing the status quo by requiring a prior, court determination that *any* distribution is: 1) "necessary" for the care, comfort and support of the proposed distributee; and 2) that the income of the trust *and* the proposed distributee are insufficient to meet the necessary care, comfort and support. This defeats the clear language of the trust which leaves such decisions to the sole discretion of the trustees. The trial court has, in effect, rewritten the trust of Ethel Ballenger by imposing special restrictions on the trustees. The temporary injunction, in effect, served to restrict the appellants as co-trustees from exercising their "sole discretion" authority by substituting the judgment of the trial court for that of the named trustees. We hold that the temporary injunction should not have been granted. *See Story v. Story*, 142 Tex. 212, 176 S.W.2d 925 (1944); *Ballenger v. Ballenger*, 668 S.W.2d at 470. Points of error three through five are sustained.

The judgment of the trial court is reversed, and judgment is here rendered that the temporary injunction be dissolved. It is our recommendation that the trial court set the case for trial on the merits at the earliest possible time.

---

4. Of the seven natural grandchildren of Ethel and Joe G. Ballenger, four are children of Robert B. Ballenger, Sr.; one is the daughter of Oscar Ballenger (the son who died in 1938); and the remaining two are children of appellants. Appellants W.T. Ballenger and Katherine Fairchild collectively have four adopted children.