**PUBLIC UTILITY COMMISSION OF TEXAS, et al., Appellants,**

v.

**GENERAL TELEPHONE COMPANY OF THE SOUTHWEST, Appellee.**

No. 3–89–137–CV.

Court of Appeals of Texas, Austin.

Sept. 27, 1989.

Rehearing Denied Oct. 25, 1989.

Jim Mattox, Atty. Gen., Steven Baron, Karen Pettigrew, Asst. Attys. Gen., Austin, for Public Utility Com'n.

W. Scott McCollough, Asst. Atty. Gen., Austin, for State Purchasing and Gen. Services Com'n.

C. Kingsberry Ottmers, Public Counsel, John L. Laakso, Asst. Public Counsel, Austin, Office of Public Utility Counsel, for appellants.

P.M. Schenkkan, Kim E. Brightwell, Vinson & Elkins, Austin, for appellee.

Before SHANNON, C.J., GAMMAGE and JONES, JJ.

SHANNON, Chief Justice.

Appellee General Telephone Company of the Southwest filed an administrative appeal in the district court of Travis County complaining of an order of the Public Utility Commission of Texas in Docket No. 5610. The Commission, by its order dated February 23, 1989, set new reduced rates and ordered that the new reduced rates not only be made prospective but also retrospective effective January 1, 1987. Such retrospective application of the reduced rates would require the telephone company to refund nearly $140 million. After hearing, the district court granted a temporary injunction enjoining the enforcement of that part of the agency order making the new reduced rate retrospective. Appellant Commission, and others, have taken an appeal from the order granting the temporary injunction.

In its order, the district court concluded that there is a reasonable probability that the telephone company will prevail upon trial of its claim that the Commission does not have the authority to order the telephone company to make its rates retrospective effective January 1, 1987. The district court further determined that the Commission's order required the telephone company to commence the refund well before the court could hear and determine the merits of the cause. The district court concluded further that, if it did not enjoin payment of the refund, the telephone company would suffer irreparable injury.

■ For the district court to grant a temporary injunction in a proceeding ancillary to judicial review of a Commission order, it must appear that:

(1) there is a reasonable probability that the utility will succeed on final hearing;

(2) the loss in the interim will be irreparable; and

(3) the customers can be adequately protected by bond.

*Southwestern Bell Tel. Co. v. Public Utility Com'n*, 571 S.W.2d 503, 506 (Tex.1978); *Public Utility Com'n v. Water Services, Inc.*, 709 S.W.2d 765 (Tex.App.1986, writ dism'd w.o.j.).

■ "[I]n accordance with the practice of courts exercising equity jurisdiction," Tex.Rev.Civ.Stat.Ann. art. 1446c, § 85 (Supp.1989), the applicant for a temporary injunction need only show a probable right and probable injury; he is not required to establish that he will finally prevail in the litigation. The trial court is clothed with broad discretion in determining whether the pleadings and evidence present a case of probable right and probable injury. The trial court's order in issuing or denying the writ of injunction will be reversed only on a showing of a clear abuse of discretion. *Transport Co. of Texas v. Robertson Transports*, 261 S.W.2d 549, 552 (Tex. 1953); *Omniphone, Inc. v. Southwestern Bell Tel. Co.*, 742 S.W.2d 523, 525 (Tex. App.1987, no writ).

■ In an appeal from an order granting or denying an application for a temporary injunction, appellate review is confined to the validity of the order granting or denying the injunctive relief and the merits of the underlying lawsuit are not presented for review. *Davis v. Huey*, 571 S.W.2d 859, 861 (Tex.1978). Indeed, appellate consideration of the merits of the underlying lawsuit in an appeal of a temporary order is error. *Id.; Hertz Corp. v. State Dept. of Highways*, 728 S.W.2d 917, 919 (Tex.App. 1987, no writ).

Appellants attack the temporary injunction claiming that the telephone company failed to show a probable right. There was no probable right to recovery, say appellants, because the Commission was empowered by statute to order the reduced rate retrospective to January 1, 1987. For authority, appellants cite Tex.Rev.Civ.Stat. Ann. art. 1446c, § 42 and § 43(f) (Supp. 1989).

Texas Rev.Civ.Stat.Ann. art. 1446c, § 42 provides in pertinent part:

Whenever the regulatory authority, after reasonable notice and hearing, on its own motion or on complaint by any affected person, finds that the existing rates of any public utility for any service are unreasonable or in any way in violation of any provision of law, the regulatory

authority shall determine the just and reasonable rates, including maximum or minimum rates, *to be thereafter observed* and in force, and shall fix the same by order to be served on the public utility; and such rates shall constitute the legal rates of the public utility until changed as provided in this Act. [Emphasis supplied.]

Texas Rev.Civ.Stat.Ann. art. 1446c, § 43(f) provides:

If, after hearing, the Regulatory Authority finds the rates to be unreasonable or in any way in violation of any provision of law, the Regulatory Authority shall determine the level of rates to be charged or applied by the utility for the service in question and shall fix the same by order to be served upon the utility; these rates are *thereafter to be observed* until changed, as provided by this Act. [Emphasis supplied.]

Appellants claim that the above quoted language authorizes the Commission to make rates effective at any time on or after the date its jurisdiction attaches. In the context of this appeal, appellants insist that the Commission was authorized, then, to make the rates effective, retroactively, to January 1, 1987.

Appellants' argument runs counter to the construction of the Supreme Court of the United States of a similarly-worded Ohio statute: *Public Utilities Com'n v. United Fuel Gas Co.*, 317 U.S. 456, 464, 63 S.Ct. 369, 374, 87 L.Ed. 396 (1942) ["The statute in terms thus gives the Commission power to prescribe such rates prospectively only."]. Referring to § 43(f), this Court in *Southwestern Bell Tel. Co. v. Public Utility Com'n*, 615 S.W.2d 947, 955 (Tex.Civ. App.), writ ref'd n.r.e., 622 S.W.2d 82 (Tex. 1981) stated, "We believe that this provision precludes making the Commission's new rates effective at any date earlier than [the date of the Commission's order]." Similarly, this Court observed in dicta that § 42 only empowers the agency "to prospectively correct rates about which there is a complaint." *Moran Utilities Co. v. Railroad Com'n of Texas*, 697 S.W.2d 447, 450 (Tex.1985), aff'd in part and rev'd in

part, 728 S.W.2d 764 (Tex.1987). Finally, the ordinary meaning of the adverb, "thereafter" has a prospective rather than retroactive connotation.

On the other hand, appellants advance authority, not on point, said to support the Commission's order. *Railroad Com'n of Texas v. Lone Star Gas Co.*, 656 S.W.2d 421 (Tex.1983).

■ Resolution of the controversy concerning the extent of the Commission's power must await appellate review of the judgment on its merits. *Davis v. Huey, supra.* In this limited review, however, this Court is not persuaded that the district court abused its discretion in concluding that the Commission was without authority to make the reduced rate effective January 1, 1987. *Transport Co. of Texas v. Robertson Transports, supra.* The point of error is overruled.

■ Appellants complain in point of error one that the telephone company failed to show that it would suffer irreparable injury unless the temporary injunction issued. We overrule the point.

In its order, the district court found, among other things, that unless the payment of the refund was enjoined, the telephone company would suffer an impaired ability to borrow funds, an increased cost of capital, a diminished cash flow, a substantial risk of a downrating of its bonds, reductions in its workforce and its capital budget, and a decreased ability to maintain its level and quality of service and competitive position. The district court determined that such injuries were irreparable because the extent of the monetary harm caused by the injuries was not capable of being measured and other injuries were impossible to repair after occurrence. The district court concluded that under the circumstances of the case, a surcharge would not be an effective remedy for many of the injuries the telephone company would suffer and a future surcharge, itself, would injure the telephone company's good will and competitive position.

In 1981, this Court concluded that ordinarily on remand to the agency, the utility

is protected by the availability of a surcharge and, as such, the utility has an adequate remedy at law. Accordingly, in the usual rate appeal, it is not necessary for the district court to enter a temporary injunction. *Southwestern Bell v. Public Utility Com'n,* 615 S.W.2d 947, 955 (Tex. Civ.App.), writ ref'd n.r.e., 622 S.W.2d 82 (Tex.1981). In that connection, the telephone company in this case did not seek injunctive relief against the prospective rate reduction ordered by the Commission. With respect to the retrospective effective date, however, the telephone company sought to demonstrate that this cause was not an ordinary rate appeal. The district court was persuaded that the telephone company would be irreparably harmed in a specific manner against which a surcharge could not adequately protect.

The telephone company's proof in support of its claim of irreparable harm included testimony of company officials, an officer of a major customer, financial analysts, and an economist. There was proof that because of the likely effect of the Commission's order on the financial condition of the telephone company, one credit-rating agency had already downrated the telephone company's bonds and that the two major credit-rating agencies were probably waiting for the results of the temporary injunction hearing to decide whether to downrate the company's bonds as well. The witness estimated the cost impact of a downrating, explained why it could not be quantified precisely, and testified that a surcharge would not automatically or promptly remedy a downrating.

A trustee for a large national pension testified that his pension fund had large holdings in the telephone company's securities. According to the pension trustee, a downrating of the telephone company by the credit-rating agencies would cause his pension fund to have a "dramatically reduced interest" in the telephone company bonds; that there was a significant chance that the major rating agencies would downrate the telephone company's bonds in the next four to six months in the absence of a temporary injunction; and that it would be "foolish" not to expect a utility to make cuts in its operations to try to ward off a downrating.

The president of the telephone company testified that workforce reductions (1,100 jobs), capital budget cuts ($100 million), and reductions in the level of service already had been made solely to mitigate the financial integrity implications of the Commission's order that required the prospective rate reductions of $59 million. He testified that, if the retrospective "refunds" of $140 million were also required, the telephone company would be forced to make additional substantial cuts in workforce and capital budget to reduce the threat to the telephone company's financial integrity. He explained that these cuts would negatively affect the telephone company's level and quality of service and drive off top employees.

Finally, a former director of the Public Utility Commission's economic research division, who was responsible for financial integrity issues, testified that the refund order posed "a major threat to the financial integrity" of the telephone company. He testified that the Commission's order which posed this threat—the retroactive effective date—was not a normal utility rate order, but was an "extreme and remarkable event that goes beyond the bounds of the normal financial impact" of Commission decisions, "a watershed," "unprecedented." He opined further that the Commission's order was harming all Texas utilities, not just appellee telephone company. The witness testified that, in his experience, the rating agencies would probably act within several months of the Commission's order. He testified that, absent a temporary injunction, prudent utility management would cut expenses, including workforce and capital expenditures, even though this would cause degradation of service, in order to try to ward off the financial integrity threat. He testified finally that many of these harms could not be quantified and many could not be remedied by surcharge.

Appellants advance the notion that "irreparable harm," in the context of an application for a temporary injunction ancillary to an administrative appeal of a rate order,

requires proof that implementation of the rate order would "present a permanent and substantial threat to the financial viability of the utility." "At bottom," says appellants, "the utility must demonstrate that a temporary injunction is necessary to avoid bankruptcy, or its equivalent, pending hearing and disposition of the case on the merits."

Indeed, the telephone company's proof falls short of demonstrating that the company will face bankruptcy in the absence of the issuance of a temporary injunction. Likewise, the telephone company has not shown that implementation of the rate order retrospectively will present "a permanent and substantial threat" to its "financial viability." Appellants, however, supply no authority for their argument that only such burdensome proof suffices to demonstrate "irreparable harm" and this Court is aware of none. The provision in § 85 that the district court is empowered to grant a temporary injunction "in accordance with the practice of courts exercising equity jurisdiction" plainly refers to "a voluminous body of case law dating from the earliest days of our jurisprudence." *Water Services, Inc.*, 709 S.W.2d at 767. This Court agrees with the telephone company's conclusion that nowhere in the voluminous body of equity case law of this State is there a requirement that a movant prove that the temporary injunction he seeks is necessary to prevent his bankruptcy or preserve his financial viability.

This Court is not persuaded that the district court abused its discretion in concluding from the evidence in this record that the telephone company would suffer irreparable harm in the absence of a temporary injunction.

The judgment is affirmed.