**LIBERTY MUTUAL INSURANCE COMPANY, Appellant,**

v.

**MUSTANG TRACTOR & EQUIPMENT COMPANY and Eureka Investment Company, Appellees.**

No. B14–90–01097–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 3, 1991.

Lynne Liberato, Houston, David R.N. Taubenfeld, Werner Powers, Dallas, for appellant.

Fred W. Stumpf, Randall A. Pulman, Houston, for appellees.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

A temporary injunction was granted enjoining appellant from withdrawing its de-

fense of appellee Eureka Investment Company (Eureka) pending a final resolution of the parties' respective rights and duties under certain insurance policies. The judgment of the trial court is affirmed.

Mustang Tractor Company (Mustang) sells heavy equipment. Eureka, a wholly-owned subsidiary of Mustang, owns the properties upon which Mustang conducts its business. Appellant has provided general liability insurance to Mustang and its subsidiaries since 1957.

In 1973, Eureka purchased a certain tract of land from the Olin Corporation. In 1978, Eureka sold a portion of this land to Southern Pacific. Southern Pacific used the land to store shipping containers. James Glona, an employee of Southern Pacific, was assigned to manage the property. Glona died on May 27, 1988, and his heirs filed a wrongful death suit against Eureka, Southern Pacific, and the Olin Corporation alleging that Glona's death was due to exposure to contaminants on and under the property. The toxic waste was allegedly left on the property by the Olin Corporation, a chemical company, which used the land to operate a pesticide blending facility.

Upon notice of the suit against Eureka, Liberty appointed counsel to represent Eureka subject to a reservation of its rights to deny coverage. Mustang and Eureka sued Liberty and their other carriers to determine the rights and obligations of the parties under the insurance policies within the context of the Glona suit. Mustang and Eureka, aware that Liberty might deny coverage, defense, or indemnification, filed for a temporary injunction to enjoin Liberty from withdrawing its defense and to preserve the status quo pending final resolution of the coverage dispute. The trial court granted the temporary injunction. Liberty brings this interlocutory appeal.

■ A party contesting the granting or refusing of a temporary injunction must show that the trial court abused its discretion. The trial judge has broad discretion in the granting or refusing of a temporary injunction, and his judgment will not be overturned on appeal unless the record dis-

closes a clear abuse of discretion. *State v. Cook United, Inc.*, 469 S.W.2d 709, 711 (Tex.1971).

In its first point of error appellant Liberty alleges that the trial court erred in issuing the temporary injunction because Liberty owes no duty to defend appellees under the insurance policies in question. In effect, Liberty argues that appellees have failed to show a probable right of recovery.

■ To establish a right to an injunction, the applicant must generally show a probable right to recovery. *See Surko Enterprises, Inc. v. Borg–Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex.App.—Houston [1st Dist.] 1989, no writ); *Tephguard Corp. v. Great North American Industries, Inc.*, 571 S.W.2d 554, 555 (Tex. Civ.App.—Dallas 1978, no writ). Liberty alleges that Eureka has failed in this respect arguing that the coverage provided does not extend to the Glona suit, and that even if the one or more of the policies do apply, they do not afford coverage because they contain a pollution exclusion clause.

■ While an applicant for a temporary injunction is required to show a probable right to recovery, he is not required to establish that he will ultimately prevail in the suit. *Public Utility Com'n of Texas v. General Telephone Co. of the Southwest,* 777 S.W.2d 827, 829 (Tex.App.—Austin 1989, writ dism'd). Here, the insurance policies introduced in evidence, when compared with the allegations in the Glona petition, show that the periods in question did perhaps cover the Glona suit because Glona allegedly came into contact with the toxins in question in the late 1970s. One of the policies covered this time period. Liberty claims that appellees put on no evidence as to the inapplicability of the pollution exclusion clauses. However, Liberty cannot assert that this proves that appellees failed to show a probable right of recovery because TEX.R.CIV.P. 94 states, in pertinent part:

Where the suit is on an insurance contract which insures against certain general hazards, but contains other provisions limiting such general liability, the

party suing on such contract shall never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions specified in the contract, *nor shall the insurer be allowed to raise such issues unless it shall be specifically alleged that the loss was due to a risk or cause coming within a particular exception to the general liability.*

(emphasis supplied) Since Liberty's answer to appellees' suit on coverage was a general denial, appellees were not required to allege and prove that each and every exclusion clause was inapplicable and Liberty may not raise this contention.

As both parties conceded at oral argument, and indirectly in their briefs, certain language in pollution exclusion clauses, such as those in this case, has yet to be interpreted under Texas law. A specific example is the applicability of these clauses for "sudden and accidental discharges". There is a some question as to whether "sudden" means quick or unexpected. This question is important in determining the coverage issues in this case. This issue, however, is not before this court. It cannot be said that the trial judge clearly abused his discretion when the state of the law on an issue is undecided. Given evidence of a probable right to recovery, the trial court may grant an injunction and reserve difficult questions of law and fact for full development at trial. *Keystone Life Ins. Co. v. Marketing Management, Inc.*, 687 S.W.2d 89, 92 (Tex.App.—Dallas 1985, no writ). In light of the theories presented by appellees as to their probable right to recovery, it cannot be said that the trial court clearly abused his discretion. Appellant's first point of error is overruled.

In its second point of error, appellant contends that the trial court erred in issuing the temporary injunction because appellees presented no evidence of harm or irreparable injury.

■ A temporary injunction will not be granted unless the applicant has shown that irreparable injury will result if such relief is not given and that the applicant has no adequate remedy at law for the damages which may result. *Ballenger v. Ballenger*, 694 S.W.2d 72, 75 (Tex.App.—Corpus Christi 1985, no writ). It is not enough for some legal remedy to exist, but the remedy at law must also be as practical, available, and effectual as the remedy at equity. *Alamo Sav. Ass'n of Texas v. Forward Const. Corp.*, 746 S.W.2d 897, 901 (Tex.App.—Corpus Christi 1988, writ dism'd).

■ Testimony as to irreparable injury came from Douglas R. Fisk, executive vice president and general manager of Mustang. Appellant's argument that none of the evidence on irreparable injury related to Liberty's withdrawing its defense from Eureka is contrary to the evidence as shown by the following exchange at trial:

Q: (by Attorney Stumpf) Mr. Fisk, would you describe to the court what effect it would have on Mustang and Eureka if Liberty Mutual were to withdraw their defense and coverage or change the status quo with regard to the pending personal injury case?

A: (by Mr. Fisk) It would have difficult impact in our business. We are a capital intensive business. We borrow large sums of money for rental fleets and because of that, we're very reliant on attractive rates and large sources of capital and unensured (sic) loss such as this could damage our relationship with financial institution.

The testimony further showed that two of appellees' largest lenders could withdraw their support and call in loans totaling forty-seven million dollars. This could result in appellees' being unable to find comparable financing. Business disruptions such as this have been found previously to be the very type of harm for which a temporary injunction can issue. *David v. Bache Halsey Stuart Shield, Inc.*, 630 S.W.2d 754, 757 (Tex.App.—Houston [1st Dist.] 1982, no writ). Appellees have no adequate remedy at law because, if Liberty wrongfully refuses to defend and appellees subsequently sue Liberty, the amount of damages that appellees could recover are limited to the policy limits of the insurance unless there is a showing of bad faith or

negligence is proved. *Whatley v. City of Dallas*, 758 S.W.2d 301, 307 (Tex.App.—Dallas 1988, writ denied). This would be insufficient to cover a loss of forty-seven million dollars in financing and an inability to procure additional financing. Appellant's second point of error is overruled.

In its third point of error, appellant alleges that the trial court erred in issuing the temporary injunction because the order sets forth no reason for its issuance.

■ Tex.R.Civ.P. 683 provides, in part, that "[e]very order granting an injunction ... shall set forth the reasons for its issuance." The requirements of Rule 683 are mandatory and must be complied with strictly. *Interfirst Bank San Felipe v. Paz Const. Co.*, 715 S.W.2d 640, 641 (Tex. 1986). This court has held that the requirement of Rule 683 that the order state the specific reasons for granting an injunction is mandatory, and the failure to comply with the rule is reversible error. *Diversified, Inc. v. Turner*, 650 S.W.2d 175, 176 (Tex.App.—Houston [14th Dist.] 1983, no writ).

■ Appellant argues that because the trial court used the phrase "denial of coverage" instead of "denial of defense" before stating its reasons, the order does not comply with the requirements of Rule 683. This is a distinction without a difference in light of a reading of the insurance policies themselves and the general understanding in the legal community of what the term "coverage" includes. The duty to defend and the duty to indemnify are separate and distinct. *American Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 153 (Tex. App.—Dallas 1990, no writ). While this is true, the order did not say "denial of idemnification." The order said denial of coverage which encompasses the duty to defend under a common understanding of the term "coverage." The fact that the trial court used the broader term "coverage" does not violate the mandates of Rule 683. The court stated that a denial of coverage would cause the appellees to be in default with two of its major lenders and could cause damage to their ability to procure financing on favorable terms. These rea-

sons are sufficient. Appellant's third point of error is overruled.

■ In its fourth point of error, appellant contends that the trial court erred in issuing the temporary injunction because the temporary injunction does not describe in reasonable detail the act sought to be restrained.

Every order granting a temporary injunction shall describe in reasonable detail and not by reference to other documents the act sought to be restrained. Tex. R.Civ.P. 683. The Texas Supreme Court has said:

An injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing ... But obviously the injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written. And obviously, too, the decree cannot prejudge new situations, which were not before the court in the first instance, whether prejudging them as nonviolations or violations of its general terms. Nor should it be greatly concerned with the rights of the defendants that are asserted largely in the abstract. Otherwise it would probably take longer to write the decree than it would to try the case, and the injunction might well become unintelligible and self-destructive.

*San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 156 Tex. 7, 291 S.W.2d 697, 702 (1956). In this case, the order enjoined Liberty from "withdrawing its defense" of Eureka. Appellants claim that this is vague and ambiguous. Appellant raises questions whether certain defense strategies might violate the injunction. The order could not possibly encompass all potential defense strategies employed by

**668**

insurance companies during a lawsuit, nor should it try. In *Ex parte Brown*, 543 S.W.2d 82 (Tex.1976), the appellant challenged the validity of an injunctive order which enjoined "taking any steps whatsoever to consolidate the captioned cause into the 58th District Court" because it was vague and uncertain. The Supreme Court held that the injunction clearly prohibited the complained of act. Just as the Supreme Court in *Brown* refused to find such an order void for vagueness, this court finds that the order here is not too vague and sufficiently advises appellant of its duties. As a large insurance carrier, Liberty is well aware of what providing a defense means. Appellants fourth point of error is overruled.

The judgment of the trial court is affirmed.