Reversed and Rendered and Majority and Dissenting Opinions filed
November 9, 2004









 

Reversed and Rendered and Majority and Dissenting
Opinions filed November 9, 2004.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-01358-CV

____________

 

T.F.W. MANAGEMENT,
INC. AND TIMOTHY F. WILLIAMS, Appellants

 

V.

 

WESTWOOD SHORES
PROPERTY OWNERS ASSOCIATION, Appellee

 



 

On Appeal from the 411th
District Court

Trinity County, Texas

Trial Court Cause No. 17,734

 



 

M A J O R I T Y   O P I N I O N








T.F.W. Management, Inc. (“TFW”) filed this
accelerated appeal to protest a temporary injunction granted to the Westwood
Shores Property Owners Association (“the Association”).  TFW argues the trial court abused its
discretion in granting the temporary injunction because (1) the evidence
demonstrated TFW did not breach its contract with the Association, (2) the
trial court misinterpreted the contract, (3) the trial court impermissibly
granted specific performance, (4) the trial court lacked authority to alter the
terms of the contract, (5) equity favors TFW, and (6) the Association was
unable to show a probable injury.  We
hold that the trial court abused its discretion because the trial court
misinterpreted the contract and we do not reach TFW’s alternate arguments.  Finding that a new water rate implemented by
the Trinity River Authority was substantially different that the rate TFW agreed
to pay, we reverse the trial court’s order granting the temporary injunction.

FACTUAL AND PROCEDURAL BACKGROUND

In 1972, BRL Joint Venture, later known as
Westwood Shores, Inc. (“the Developer”), developed nineteen subdivisions
collectively known as Westwood Shores. 
The subdivisions were centered around the Westwood Shores Country Club,
which included a golf course and other amenities.

On October 31, 1996, the Developer sold
the Westwood Shores Country Club to TFW. 
In conjunction with the sale, the Developer executed a Deed Without
Warranty (“the Deed”) conveying Westwood Lake to the Association, and an
Assignment of Water Rights (“the Assignment”) assigning TFW an easement right
in use of water from the lake.  The Deed
provided that:

[The Association] acknowledges that
Grantor’s reservation of water rights could possibly result in the availability
of little or no water within Westwood Lake for purposes other than those
benefiting the property commonly referred to as Westwood Shores Country Club,
and [the Association] agrees to accept this conveyance subject to a burdened by
such reservation of water rights. 
However, the [TFW] shall have the duty and obligation to maintain the
water at a sufficient level so that Members of [the Association] may also enjoy
the benefits of Westwood Lake for aesthetic and recreational purposes so long
as water sufficient for these purposes is reasonably available from Trinity
River Authority of Texas under terms substantially similar to those contained
within the Limited Raw Water Sales Agreement from Reservoir, by and between
[the Developer] and the Trinity River Authority in effect as of the date of
this Deed Without Warranty, with adjustments for inflation.








The Assignment similarly provided that:

TFW shall have the duty and
obligation to maintain the water [within Westwood Lake] at a sufficient level
so that Association members may also enjoy the benefits of Westwood Lake for
aesthetic and recreational purposes so long as water suitable for these purposes
is reasonably available from Trinity River Authority of Texas under terms
substantially similar to those contained within the Limited Raw Water Sales
Agreement From Reservoir, between [the Developer], and Trinity River Authority
in effect as of the date of this Assignment of Water Rights, with adjustments
for inflation.

In 1997, TFW and the Trinity River
Authority entered into a Limited Raw Water Sales Agreement From Reservoir (the
“Sales Agreement”) substantially similar to the one referenced in the Deed and
the Assignment.  The Sales Agreement
provided that TFW was to pay the Trinity River Authority a minimum annual
charge of $1551, and that TFW would be able to divert up to 470 acre-feet of
water.  TFW could also divert additional
water, at a rate of $3.30 per acre-foot.

But, in December of 1999, the Trinity
River Authority implemented new, greatly increased water rates.  The rate was increased to $35 per acre-foot
effective December 1, 2000, with additional escalation to $55 in 2002, $75 in
2004, and $95 in 2006.  After the rate
increases went into effect, TFW stopped replacing the water it used for
irrigation of the Westwood Shores Country Club.

The Association filed a petition for
temporary injunction, requesting that TFW cease irrigation of the Westwood
Shores Country Club and replenish Westwood Lake to its original level.  The trial court granted the temporary
injunction, prompting this accelerated appeal.

ANALYSIS

I.        Standard
of Review








“To obtain a temporary injunction, the applicant
must plead and prove three specific elements: (1) a cause of action against the
defendant; (2) a probable right to the relief sought; and (3) a probable,
imminent, and irreparable injury in the interim.”  Butnaru v. Ford Motor Co., 84 S.W.3d
198, 204 (Tex. 2002).  A trial judge has
broad discretion in deciding whether to grant or deny temporary injunctions,
and the standard of review is a clear abuse of discretion.  See Liberty Mut. Co. v. Mustang
Tractor & Equip. Co., 812 S.W.2d 663, 666 (Tex. App.—Houston [14th
Dist.] 1991, no writ).  The trial court
abuses its discretion when “the law is misapplied to established facts, or when
the evidence does not reasonably support the conclusion that the applicant has
a probable right of recovery.”  State
v. Southwestern Bell Tel. Co., 526 S.W.2d 526, 528 (Tex. 1975).

II.       Water Was Not Available Under Terms
Substantially Similar to Those in Effect in 1996.

TFW argues that it was no longer obligated
to replenish Westwood Lake because the rate per acre-foot of water increased
from $3.30 in 1996 to $35 in 2000.  TFW
bases its argument on the language in the Deed and the Assignment that
conditions its obligation to purchase water on water being available “under
terms substantially similar to those contained within the Limited Raw Water
Sales Agreement from Reservoir, . . . with adjustments for inflation.”  The primary question before us in this case
is whether the new rates the Trinity River Authority implemented were
substantially similar to those contained in the Raw Water Sales Agreement.  A secondary question is whether the increase
in the price of water was a result of inflation.

When examining the language of the Deed
and the Assignment, we must give effect to the true intention of the parties as
expressed in the instruments.  See
Lenape Res. Corp. v. Tenn. Gas Pipeline Co., 925 S.W.2d 565, 574 (Tex.
1996).  The language in a contract is to
be given its plain meaning unless doing so would defeat the parties’ intent. DeWitt
County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 101 (Tex. 1999).  We presume that the parties intended every
clause to have an effect.  Heritage
Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996).








A.      The
Rate Was Substantially Different.

The evidence before us indicates that the
rate for one acre-foot of water increased from $3.30 in 1996 to $35 in 2000, an
increase of approximately 960%.  The
parties agree that all other terms of the water purchase agreement are substantially
similar to those in 1996.

The rate at which water is available does
not appear to be substantially similar to the rate at which it was available in
1996.  The price of a good is a material
element of a contract.  John Wood
Group USA, Inc. v. ICO, Inc., 26 S.W.3d 12, 20 (Tex. App.—Houston [1st
Dist.] 2000, pet. denied).  In fact,
price is often the very essence of the contract, without which there cannot be
a contract.  See Gerdes v.
Mustang Exploration Co., 666 S.W.2d 640, 644 (Tex. App.—Corpus Christi
1984, no writ) (holding that a contract for the sale of water was not binding
because the price was not specified). 
Thus, although the remainder of the terms are similar, we cannot say
that the “terms are substantially similar” when the evidence indicates the rate
at which water was available changed drastically.

The Association points to language in the
Sales Agreement providing for possible rate increases.  The Sales Agreement states that the “Annual
Standby Charge may be revised from time to time to conform to [the Trinity
River Authority’s] Resolution No. R-157 . . . .”  However, while the anticipation of rate
increases indicates that the Trinity River Authority did not breach the
contract, it does not indicate that water is still available under the original
terms.

We determine that the Association has not
demonstrated that water to replenish Westwood Lake was  available under substantially similar terms
to those available at the time the Deed and the Assignment were entered into.  However, the Deed and the Assignment also
provided that inflation could cause a difference in the terms.  Therefore, we next address whether the change
in terms could have been due to inflation.








B.      The Difference Is Greater than Could Be
Accounted for by Inflation.

1.       We
Apply the Ordinary Definition of Inflation.

Although the term “inflation” was used in
the Deed and the Assignment, it is never defined.  We will therefore apply the plain, ordinary,
and generally accepted meaning of the term. 
Heritage Res., 939 S.W.2d at 121. 
Inflation is defined as “[a]n overall rise in prices which results in a
decline in the real value of the dollar,” Black’s
Law Dictionary  779 (6th ed.
1990), and “an increase in the volume of money and credit relative to available
goods resulting in a substantial and continuing rise in the general price
level.”  Webster’s Third New International Dictionary Unabridged 1159
(1993).  These definitions of inflation
indicate that inflation affects the general prices of goods; thus, a price
increase due to scarcity of a particular good would not be inflationary.  See id.

2.       The Rate Increase Was Greater than
Inflation.

The Deed and the Assignment do not supply
an index to measure inflation against, nor have the parties supplied us with
any historical data to compare this rate to. 
In the absence of a specified measure of inflation, we will look to the
Consumer Price Index prepared by the Bureau of Labor Statistics.  See Black’s
Law Dictionary 779 (6th ed. 1990) (“The primary indexes for measuring
the rate of change are the Consumer Price Index and the Producer Price
Index.”); Ark. La. Gas Co. v. Fed. Energy Regulatory Comm’n, 654 F.2d
435, 443 n.19 (5th Cir. 1981) (stating that the Consumer Price Index is one of
the three measures of inflation traditionally relied upon by economists).  According to the Consumer Price Index, the
total inflation from 1996 to 2000 was approximately 10%.  See U.S. Department of Labor, Bureau
of Labor Statistics, Inflation and Consumer Spending, Inflation Calculator
(Aug. 30, 2004), available at http://www.bls.gov/cpi/home.htm.  The rate increase from $3.30 in 1996 to
$35.00 in 2000 corresponds to an increase of approximately 960%.  This rate increase thus appears to be greater
than could be accounted for by inflation alone.

 








3.       The Trinity River Authority Indicated
that the Rate Increase Was Due to More than Just Inflation.

Further, the evidence indicated that the
rate increase was due, at least in part, to factors other than inflation.  Robert Stevens of the Trinity River Authority
stated:

Q:      Why did the TRA institute an increase in
price?

A:      Well, there were several reasons.  The rates have not increased since 1972.  As I say, times are changing.  Water is becoming very valuable.  It’s a valuable resource.  It’s declining in quantities; and we had a
firm do a study, first of cost of service, the cost for us to provide that
amount of water to replace the amount of water in Lake Livingston, as well as a
market survey.  And our rates were—since
they had not been increased in thirty years—were way too low.

Q:      So the changes were based upon inflation
and costs of water in general; is that correct?

A:      Just in general in Texas, yes.

Thus, there were at least two factors
responsible for the increase in the water rate: (1) inflation, and (2) the
increased value of water.  The
Association argues that the rate increase could be the result of inflation
despite the presence of additional factors, but the Deed and the Assignment
provide only for increases due to inflation, not for increases due to other
causes.  The mention of only inflation
supports an inference that the parties did not mean to include the increased
value of water.  See Baty v.
ProTech Ins. Agency, 63 S.W.3d 841, 854 (Tex. App.—Houston [14th Dist.]
2001, pet. denied) (applying the maxim expressio unius est exclusio alterius—that
the naming of one thing excludes another).








Stevens also testified that the price
increase had not been changed since 1972. 
However, the Deed and the Assignment appear to provide only for
inflation increasing the price since 1996, not retroactively-applied inflation;
the applicable language refers to the terms 
“in effect as of the date of this Deed . . . , with adjustments for
inflation” and “in effect of the date of this Assignment . . . , with
adjustments for inflation.”  Reading the
Deed and the Assignment otherwise could lead to the anomalous result that
twenty-four years of inflation would have been applicable the date the
agreements took effect.  Cf. Bode
v. United States, 919 F.2d 1044, 1053 n.8 (5th Cir. 1990).  As a result, the appropriate base date
appears to be 1996.  Cf. id.
(“[T]he effective date of the current version of the statute is the appropriate
base date for a cost‑of‑living adjustment . . . .”).  Thus, the portion of the rate increase that
was due to inflation that occurred before 1996 would not be within the language
of the Deed or the Assignment.

In short, we conclude the Association has
not demonstrated that adjustments for inflation caused the rate increase.  Under the terms of the Deed and the
Assignment, TFW would be excused from having to supply water to replenish Westwood
Lake.  However, before we can determine
that the trial court erred in granting the temporary injunction, we must
address the Association’s arguments that TFW should be estopped from asserting
the contract provision.

III.      The Clause Requiring Substantially Similar
Terms is a Condition Precedent, Not a Covenant.

First, the Association argues that the
clause requiring that water be available under substantially similar terms is a
covenant, not a condition precedent.  A
condition precedent may be either a condition to the formation of a contract or
to an obligation to perform an existing agreement.  Hohenberg Bros. Co. v. George E. Gibbons
& Co., 537 S.W.2d 1, 3 (Tex. 1976). 
A condition precedent to an obligation to perform is an act or event,
which occurs subsequently to the making of a contract, that must occur before
there is a right to immediate performance and before there is a breach of
contractual duty.  Id.  However, when the intent of the parties is
doubtful or when a condition would impose an absurd or impossible result, then
the agreement will be interpreted as creating a covenant rather than a
condition.  Id.  Because of their harshness in operation,
conditions are not favorites of the law. 
Criswell v. European Crossroads Shopping Ctr., Ltd., 792 S.W.2d
945, 948 (Tex. 1990).  Thus, in
construing a contract, forfeiture by finding a condition precedent is to be
avoided when another reasonable reading of the contract is possible.  Id.








We reject the Association’s contention
that the clause is not a condition precedent, because the Deed and Assignment
unambiguously state that TFW is only obligated to maintain the water level “so
long as water sufficient for these purposes is reasonably available from
Trinity River Authority of Texas under terms substantially similar [to the 1996
terms].”  Further, the Deed provides that
the Association “acknowledges that Grantor's reservation of water rights could
possibly result in the availability of little or no water within Westwood Lake
. . . .”  To construe the clauses within
the Deed and the Assignment as other than conditions precedent would be to
ignore their plain language.

IV.      TFW Did
Not Breach a Duty to Protest the Rate Increase.

Second, the Association argues that TFW
cannot assert a condition precedent because TFW made the performance of the
condition precedent impossible.  The
Association argues that TFW did not protest the rate increase to the Trinity
River Authority, and thus should not be allowed to use the rate increase to
escape its obligation to replenish Westwood Lake.

A.      TFW Did Not Have a Duty To Protest the
Rate Increase.

Although the Association claims that TFW
had an express duty to protest any rate increase, an examination of the Sales
Agreement does not reveal any such express duty.  The Sales Agreement provided:

This Agreement is subject to all
applicable Federal, State and local laws and any applicable ordinances, rules,
orders and regulations of any local, State or Federal governmental authority
having or asserting jurisdiction including, but not limited to, the rate-fixing
power of the Texas Natural Resource Conservation Commission under Section
12.013, Water Code.  Provided, however,
that nothing contained herein shall be construed as a waiver of any right to
question or contest any such law, ordinance, order, rule or regulation in any
forum having jurisdiction, and each party agrees to make a good faith effort to
support such proposed laws and regulations which would be consonant with the
performance of the Agreement in accordance with its terms.








The Sales Agreement thus only provides that TFW is
required to comply with the applicable laws, not that TFW is required to avail
itself of the procedures provided by the applicable laws.  Because there is no indication that TFW
failed to comply with the applicable laws, TFW has not breached an express
duty.

B.      There
is No Evidence that a Protest Would Have Been Effective.

The Association also argues that TFW
prevented or made impossible the condition precedent.  See Dorsett v. Cross, 106
S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (“Prevention
of performance by one party excuses performance by the other party, both of
conditions precedent to performance and of promise.”).

The Association asserts that TFW should have
been required to protest the rate increase. 
However, the only evidence before us indicates that any such protest
would have been ineffective.  Stevens
stated that the price of water had not been raised since 1972, and he also
stated that water has been increasing in value. 
Thus, there appears to have been a reasonable basis for the rate
increase.  The applicable statute only
provides for protest when the increase is unreasonable, not when the increase
is greater than inflation.  See Tex. Water Code § 12.013(a) (“The
commission shall fix reasonable rates for the furnishing of raw or treated
water . . . .”).  Because the evidence
indicates the price increase was due to the Trinity River Authority’s failure
to raise its rates since 1972 and the increased value of water, TFW’s
inactivity would not have prevented occurrence of the condition precedent.

CONCLUSION

We hold that the Association has not
proven a probable right to the relief sought because it has not demonstrated
that water was available under terms substantially similar to those available
in 1996.  Under the terms of the Deed and
the Assignment, TFW would therefore not be obligated to replenish water in the
lake.  Further, we hold that TFW was not
estopped from asserting it was not obligated to replenish water in the
lake.  Because the trial court erred in
granting the temporary injunction, we affirm appellant’s first issue.[1]








We reverse the judgment of the trial court
and order the temporary injunction dissolved.

 

 

 

/s/      Wanda McKee Fowler

Justice

 

Judgment
rendered and Majority and Dissenting Opinions filed November 9, 2004.

Panel
consists of Justices Fowler, Edelman, and Seymore.  (Seymore, J., dissenting.)

 

 











[1]  Because we
reverse the judgment of the trial court, we do not reach appellant’s remaining
issues.